## KELLEY v. WHITEHURST et al.
## MANLEY et ux. v. KELLEY et al.—264 S. W. (2d) 1.

Western Section. July 8, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953.

E. J. Nunn, of Jackson, Allen J. Strawbridge, of Dresden, and W. H. Lassiter, of Huntingdon, for appellants, J. W. Kelley, W. Baxter Kelley, Louise Kelley Knight, Mamie Whitehurst Reynolds, Executrix.

Harry E. Jones, of Dresden, and George C. Rowlett, of Martin, for appellees.

CARNEY, J.—This is an appeal from a decree of the Chancery Court of Weakley County, Tennessee, vesting the title to approximately 12 acres of land described in the

pleadings in fee simple in the defendants and cross-complainants, Hula Manley and wife, Madge Fulghum Manley. The appellants, J. W. Kelley and Annie Whitehurst are full brother and sister of Miss Lula V. Kelley who died intestate without any children or direct descendants in Madison County, Tennessee, on or about March 13, 1949. Appellants, W. Baxter Kelley and Louise Kelley Knight are half-brother and half-sister, respectively, of the said Lula V. Kelley. The original bill was filed by J. W. Kelley against Annie Whitehurst, W. Baxter Kelley and Louise Kelley Knight and against Hula Manley and wife, Madge Manley. The original bill averred that Lula V. Kelley died seized and possessed of said tract of land containing approximately 12 acres and request was made for sale of said land for division. The defendants, Annie Whitehurst, W. Baxter Kelley, and Louise Kelley Knight, answered admitting substantially the allegations of the bill. The defendants, Hula Manley and wife, Madge Manley, who were actually in possession of and living on said property, filed an answer and cross-bill against the appellants alleging themselves to be the actual and equitable owners of said tract of land under a verbal agreement with the deceased Lula V. Kelley, to wit: Namely, that the said Manley and wife, along with one C. W. Fulghum, father of Mrs. Manley, had on or about March 14, 1935, conveyed a tract of 240 acres belonging to C. W. Fulghum, and a tract of 43 acres belonging to Fulghum, which property was located north of the McKenzie-to-Gleason Public Road, and a tract of 12 acres, being the Manleys' homeplace and owned by them, located south of said road, with the express understanding and agreement that Lula V. Kelley would assume and pay off an indebtedness to the Prudential Insurance Company of America in the amount

of \$5,500, plus \$1,675.90 delinquent interest and taxes, which was secured by a first mortgage on all three tracts of land; and that the said Lula V. Kelley would sell the 240 acre Fulghum tract of land and as much of that portion of the 43 acre tract of land which lay north of the McKenzie-to-Gleason Public Road as would be necessary to reimburse the said Lula V. Kelley for the amount paid the Prudential Insurance Company, and that after she had gotten all of her money back she would reconvey to the said Manley and wife their homeplace. The cross-bill further averred that the said Lula V. Kelley had in May 1937 sold the 240 acre Fulghum tract for \$6,000 and in November 1943 sold 40 acres of the Manley property for \$2,000, making a total received by Lula V. Kelley from the sale of said lands of \$8,000, making a full reimbursement to her in excess of the amount paid Prudential Insurance Company, and that Lula V. Kelley had never reconveyed the Manley 12 acre homeplace to Manley and wife according to her agreement. The bill further averred that the Manleys had continued to occupy the property from March 1935 to the date of death of Lula V. Kelley without the payment of any rent and claiming the same as their own under said agreement above mentioned. The cross-bill prayed for alternative relief as follows:

1. That the deed of March 14, 1935, to Lula Kelley be cancelled, or

2. That title to said land be vested in cross-complainants, Manley and wife, by decree of the Court, or

3. That the Court declare a trust and lien on said lands and that the lands be sold and the proceeds used to satisfy said lien, and the cross-complainant also prayed for general relief.

Cross-defendants, appellants herein, demurred, which demurrer was overruled with leave to rely upon same in their answer, after which the appellants filed answer and denied the existence of any such agreement for the reconveyance of said land; relied upon the Statute of Frauds and further pleaded that the cross-complainants, Manley and wife, had been guilty of laches in waiting from 1943 until after the death of Lula V. Kelley in 1949 to take legal action for the reconveyance of said land under said agreement.

The Chancellor found from the proof that the "evidence is sufficiently clear, cogent and convincing and of such character, quantity and weight as to establish the agreement as alleged by cross-complainants". The Chancellor further adjudged that such an agreement constituted a trust imposed upon the land in question and that such trust can be established by parol evidence even though grantee held under a recorded general warranty deed. The Chancellor entered a decree divesting title out of the appellants as the heirs at law of Lula V. Kelley, deceased, and vested fee simple title in Manley and wife. J. W. Kelley, W. Baxter Kelley, Louise Kelley Knight, and Mamie Whitehurst Reynolds as personal representative of Annie Whitehurst, deceased, have perfected an appeal therefrom to this Court and have made eight Assignments of Error which assail the action of the Chancellor in overruling the demurrer and also assail various portions of the Chancellor's decree. These Assignments of Error when summarized raise the following questions for consideration and decision by this Court:

1. That the parol evidence to establish the agreement to reconvey is not clear, cogent and convincing as found by the Chancellor.

2. That under the Statute of Frauds parol testimony concerning the agreement to reconvey the land was not admissible.

3. That the cross-complainants were guilty of laches.

4. That the pleadings are not sufficiently broad to support the relief granted to cross-complainants, Manley and wife, by the Chancellor.

■ We concur with the finding of the Chancellor that the evidence concerning the agreement to reconvey is clear, cogent and convincing and of such character, quantity and weight as to establish the agreement as alleged by cross-complainants: In 1927 C. W. Fulghum, father of Mrs. Manley, owned a tract of 240 acres of land and a tract of 43 acres, all of which land lay north of the McKenzie-to-Gleason Public Road. Manley owned approximately 12 acres on which they made their home, which lay south of the McKenzie-to-Gleason Public Road. The 12 acres was a portion of a 55 acre tract of land which included the 43 acres of Fulghum above mentioned. Fulghum had given the 12 acres of land to Manley and wife. Fulghum borrowed $5,500 from the Prudential Insurance Company of America and the Prudential required Manley and wife to join in the deed of trust and also to include their 12 acre tract south of the road in the trust. Few, if any, payments were made on the principal of the Prudential loan up until 1935 when the loan was in arrears and $1,675.90 in accrued interest and back taxes were necessary to be paid in order to make the loan current, and the Prudential was threatening foreclosure of its deed of trust. Fulghum's first wife, the mother of Mrs. Manley, had died about 1928, and Fulghum lived in the home of the Manleys. After the death of Fulghum's first wife and sometime later in 1928 Lula V. Kelley, who was an employee of the Southern Bell Telephone Company at

Jackson, became a regular visitor in the Manley home. Fulghum, who was a long time employee of the telephone company, had assisted Miss Kelley in getting her original employment. Fulghum and Miss Kelley became very closely associated, bought and sold telephone exchanges jointly, were in the cattle business and the farming business together, and Miss Kelley handled all the finances of the joint businesses and kept all the money. Fulghum and Miss Kelley held themselves out to their close friends and to the Manleys as man and wife, and the Manleys so understood it, though the marriage was never actually proven. Lula Kelley retained the name of Kelley, so she said, for matters of security of her position with the telephone company, but at the time of Fulghum's death in 1943 the McKenzie newspaper listed her as a surviving widow, so the relationship of Lula Kelley to Mrs. Madge Manley was that of a very friendly step-mother.

In March 1935 Mr. Fulghum, Hula Manley and wife, Madge Manley, and Miss Lula Kelley all agreed that in order to save the land from foreclosure, the Manleys and Fulghum would execute a general warranty deed to all of the real estate with the express understanding that Lula V. Kelley would pay the delinquencies on the Prudential loan and keep the loan current or else refinance the same and sell a sufficient amount of the real estate to reimburse all of her expenses and outlay of cash and reconvey the Manley 12-acre homeplace. It is conceded that Mr. and Mrs. Manley and Mr. Fulghum received no property or money at the time of execution of their deed to Miss Kelley except the assumption by Miss Kelley of the indebtedness to Prudential Insurance Company. It was understood that it would take all of the 240 acres, plus a portion of the 43 acre tract to pay off the indebtedness and that they would get the 12-acre Manley homeplace

clear of indebtedness and when this was done Lula V. Kelley would reconvey the same to the Manleys. The deed to Kelley by C. W. Fulghum and Manley and wife was executed and Lula V. Kelley took over the actual management and rental of the 240 acres and the 43 acres, respectively, but Manley and wife continued in the possession and control of the 12 acre homeplace. In 1937 the 240 acre tract was sold for $6,000 by Miss Lula Kelley (or Mrs. Lula Fulghum), and in January 1943, 3 acres were sold to Leatherwood for $320 and in November 1943, 43 acres were sold to Montgomery for $2,000. Some of these lands were sold on credit, but Miss Lula Kelley collected the entire amount, plus accrued interest, and she received a total of $8320 principal consideration from the sale of said land, plus rentals collected, and for which land she only paid the sum of $7,175.90, so far as this record shows. After the death of C. W. Fulghum in 1943 Miss Lula Kelley (or Lula Fulghum) continued her weekly visits to the Manleys and exercised no control over said 12 acre tract of land and repeatedly referred to said tract of land to neighbors of the Manleys as being "the Manleys' home". Relations between the Manleys continued very, very close up until the sudden and very unexpected death of Lula Kelley (or Lula Fulghum) in Jackson in 1949. The record shows that Mrs. Lula Fulghum left a net personal estate of a value of over $60,000, and is silent as to the amount of her real estate holdings exclusive of the 12 acres in controversy, and that for several years prior to the death of C. W. Fulghum all his earnings were turned over to and kept by Miss Lula Kelley and she doled out spending money to him from time to time. There is a suggestion in the record that possibly Fulghum drank and gambled and for this reason probably he and Lula Kelley both thought that she should keep the money.

The testimony of the Manleys concerning the agreement to reconvey is corroborated by neighbors and relatives and is not refuted by any contradictory evidence. Therefore, we concur with the Chancellor in finding that Miss Lula Kelley received title under warranty deed to the 12 acres of land described as the Manley homeplace and at such time she had an express agreement amounting to a trust to hold said 12 acres for the benefit of Manley and wife and to reconvey the same to them by similar warranty deed when she had been repaid and reimbursed all of the money and expenses paid out by her in assuming and paying off the indebtedness to the Prudential Insurance Company. We also fully concur in the finding of the Chancellor that she had been fully reimbursed from the sale of the other lands no later than November 1943. Therefore, the Assignments of Error insofar as they relate to the sufficiency of the evidence to prove the parol trust are overruled.

The Assignments of Error insofar as they are predicated upon the Statute of Frauds, particularly Section 7831 of the Code of Tennessee, as prohibiting the setting up of a trust in real estate by parol evidence in Tennessee, must also be overruled. The Courts of our State have consistently held that trusts in real estate may be proven by parol evidence. Among those decisions are Adrian v. Brown, 1946, 29 Tenn. App. 236, 196 S. W. (2d) 118; Brunson v. Gladish, 174 Tenn. 309, 125 S. W. (2d) 144; Hunt v. Hunt, 169 Tenn. 1, 80 S. W. (2d) 666; Mee v. Mee, 113 Tenn. 453, 82 S. W. 830; Woodfin v. Marks, 104 Tenn. 512, 58 S. W. 227, and many others. The appellants rely mainly upon the case of Webb v. Shultz, 184 Tenn. 235, 198 S. W. (2d) 333. We do not think Webb v. Shultz is controlling in this case for the reason that the life estate claimed to have been reserved to the complainant in parol

was inconsistent with and repugnant to the fee simple title conveyed by deed to the grantee. On the contrary, we think the case at bar is controlled by the law enunciated in Hunt v. Hunt, supra, 169 Tenn. 1, 80 S. W. (2d) 666, opinion by Chief Justice Green. In the Hunt case the husband brought suit against his wife seeking to impress a trust upon the real estate which he had conveyed to her during their marriage alleging a definite agreement that the wife would hold title to said property in trust and for their joint benefit. The Court held that parol evidence was competent to impose a trust for one-half interest upon said lands in favor of the husband.

The contention that the cross-complainants, Manley and wife, were guilty of such laches as to bar their right of recovery for failing to make demand for the reconveyance to them of their home under the trust agreement from 1943 until after the death of Lula Kelley (Fulghum) in 1949 is not well taken. The facts show that Lula Kelley Fulghum was a weekly visitor in the home of the Manleys and, seemingly, they were as close as step-mother and step-daughter could be, and there was nothing in the association between them to indicate to the cross-complainants that Lula Kelley Fulghum had not and would not carry out her original agreement. Certainly their failure to make such demand did not prejudice the rights of Lula Fulghum and, therefore, the rights of the appellants, her heirs. Therefore, the defense of laches is overruled.

Finally, the appellants contend that the pleadings of the cross-bill are inconsistent and are not sufficiently broad to impress upon the real estate a trust and to complete the trust by divesting title from the appellants and vesting the same in the cross-complainants, Manley and wife. This Assignment of Error must also be over-

ruled. In their prayer cross-complainants, Manley and wife, expressly asked, among other alternatives, that the title to said real estate be vested in them, and also prayed for general relief. In the case of Walker v. Walker, 2 Tenn. App. 279, at page 290, the Court held that even though the prayer of the bill was for reformation of a deed, yet, under the prayer for general relief, the bill would justify a decree setting up a trust in favor of the complainant in the real estate described therein.

It results that all Assignments of Error are overruled, the decree of the Chancellor is affirmed, and the appellants are taxed with the costs of this appeal.