BANK OF COMMERCE & TRUST CO. v. POPE et al.—103 S. W. (2d) 586.

Western Section.   February 21, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.*

John B. Snowden, II, and Armstrong, McCadden, Allen, Braden, & Goodman, all of Memphis, for complainant.

E. P. Boyd, of Memphis, and Maiden & Maiden, of Dresden, for defendants.

SENTER, J.   This is an appeal from the decree of the chancellor by Mrs. Lyde Pope Brown, individually, and by Lyde Pope Brown and Dean H. Pope, executors, to so much of the decree of the chancellor as held that a conveyance executed on January 8, 1932, by Mary A. Pope to her daughter, Lyde Pope Brown, constituted a fraud in law, and in decreeing that said deed be set aside, and that the property be sold, and that out of the proceeds of the sale, Mrs. Brown be reimbursed for the amount that she had paid or assumed to pay in the purchase of said property, plus certain taxes and interest that she had paid on the property, and that the balance remaining be applied to a deficiency judgment in favor of complainant and against the defendants, except the defendant, Mrs. Lyde Pope Brown.

The original bill sets out with considerable detail the transactions of Mrs. Pope and the indebtedness which Mrs. Pope had assumed to pay to the bank as a part of the consideration in the purchase of certain property situated in the city of Memphis, consisting of two separate pieces of property securing the described indebtedness to the complainant bank, and the foreclosure sale of said property and the amounts realized therefrom and the amount of the deficiency remaining unpaid.   The bill with considerable detail attacks the conveyance made of the tract of 27½ acres by the deed of January 8, 1932, and by which Mrs. Mary Pope conveyed to her daughter, Mrs. Lyde Pope Brown, the 27½ acres as being both a fraud in law, and a fraud in fact.   The bill alleges that the conveyance was made by Mrs. Pope to her daughter for the purpose of hindering, delaying, and defeating the complainants in the collection of their just debt against Mrs. Pope, and that both Mrs. Pope and Mrs. Brown, by collusion, sought to hinder and delay and defeat the payment of said debts by Mrs. Pope by conveying this 27½ acres to Mrs. Brown.

It is not necessary here to consider any of the answers to the bill except the answers of Mrs. Brown and Mrs. Pope.   Mrs. Brown by her answer stated that the conveyance was made to her by her mother in the utmost good faith and without any fraudulent intention either upon the part of her mother or by her to hinder or delay or defeat the collection of the bank's debt against Mrs. Pope.   By both their answers they denied all charges of fraud, either actual or constructive, and both insisted that Mrs. Brown paid to Mrs. Pope a fair and valuable consideration for the property, and denied that the bank was entitled to any of the relief sought against Mrs. Brown. There were also cross-bills filed by the defendants attacking the sale of the mortgaged property by the bank at the foreclosure sales.   However, the attack made by the defendants on the mortgage foreclosure sales was not pressed or insisted upon at the hearing of the cause, and need not now be considered, as neither party appealed from

the decree of the chancellor on that subject. The chancellor filed an elaborate finding of the facts and also included therein his conclusions of law as well as of the facts. There are only two questions really presented on this appeal. The first question is with reference to the action of the court in sustaining exceptions filed by the complainant to the testimony of Foster V. Brown, the husband of Lyde Pope Brown, on the grounds that his testimony came within the rule of hearsay evidence. The second and only other question presented for determination on this appeal goes to the action of the chancellor in finding, holding, and decreeing that the conveyance executed by Mrs. Pope to Mrs. Brown of the 27½ acres situated in Memphis, Tennessee, by deed dated January 8, 1932, constituted constructive fraud, or a fraud in law, and in decreeing that said sale be set aside, and in decreeing a lien thereon in favor of Mrs. Brown for only the amount of the indebtedness which she had assumed in the deed, amounting to $2,650, and delinquent taxes which she had paid on the property, amounting to $731,85, and in denying any lien on the property of any indebtedness which Mrs. Pope owed her daughter, Mrs. Brown; or rather, any of the advances made by Mrs. Brown to her mother prior to the execution of the deed; and in denying the items advanced and paid by Mrs. Brown for her mother subsequent to the execution of the deed and the expenses incurred in the support and maintenance by Mrs. Brown of her mother to the time of her death.

It is not now necessary or material to consider the value of the Madison avenue property owned by Mrs. Pope and which secured the two notes of $5,000 and $5,500 respectively and the payment of which Mrs. Pope had assumed in the purchase of the Madison avenue property, except as it may reflect upon the intention of both Mrs. Pope and Mrs. Brown at the time Mrs. Pope conveyed to Mrs. Brown the 27½ acres. After the foreclosure of the trust deeds on that property, there remained a balance owing to the complainant bank of $5,829.45, and with accrued interest thereon from April 11, 1932, to the date of the decree, amounting to $1,170.74.

The chancellor further decreed that W. R. Cox and Victoria Craft Cox, who conveyed the Madison avenue property, are entitled to recover of the executors of the estate of Mrs. Mary Pope, deceased, said deficiency. This, on the theory that Mrs. Pope had assumed for W. R. Cox and Victoria Cox the payment of the encumbrance debt on the property as a part of the consideration in the purchase of same.

The chancellor specifically found and so decreed that neither Mrs. Mary A. Pope nor Mrs. Lyde Pope Brown were guilty of any actual or active fraud in the transaction by which Mrs. Pope conveyed to Mrs. Brown the 27½ acres. There was no appeal from this part of the decree of the chancellor by either of the parties. It does not, therefore, become necessary to consider the question of actual fraud in disposing of the questions made on this appeal.

The chancellor seemed to predicate his holdings that the advances made by Mrs. Brown to her mother prior to the execution of the deed of January 8, 1932, did not constitute the relation of debtor and creditor between Mrs. Pope and Mrs. Brown and that such advances were not intended to be paid by Mrs. Pope or collected by Mrs. Brown from her mother, and upon the further theory that these advances, if debts, were barred by the statute of limitations. It was upon this theory that the chancellor did not allow to Mrs. Brown a lien on the property covering said advancements.

On the first question presented by the assignments of error, which challenge the action of the court in sustaining the exceptions to the evidence of Foster V. Brown, and excluding the same on the theory that said evidence was hearsay and therefore incompetent, we cannot agree to the holding of the chancellor on this question.

It appears that Foster V. Brown, representing his wife and his wife's mother, was present on the night preceding the preparation and execution of the deed, and heard Mrs. Pope and Mrs. Brown discuss the question of making the conveyance. The scope of his testimony was practically confined to the matter of the consideration passing between Mrs. Brown and her mother for the conveyance of this property. The question of the actual consideration was one of the principal issues involved in the litigation under the pleadings by the respective parties. The consideration was sharply challenged, both by the bill and by the testimony offered by complainant.

Mr. Brown testified that Mrs. Pope referred to the advances made by his wife to her, and the encumbrance debt on the property which she proposed to convey and the delinquent taxes thereon, and his evidence was to the effect that Mrs. Pope desired that said advances or debts be made a part of the consideration, and he referred to these advances as a part of the consideration in writing the deed, because of Mrs. Pope's statement that she wanted those advances to constitute a part of the consideration. He also testified that Mrs. Pope and Mrs. Brown agreed as a part of the consideration that Mrs. Brown would support her mother during the remainder of her life time and that this was to constitute a part of the consideration for the conveyance, but that he did not write this latter condition in the deed, because he knew that it was a matter that could be proved, if necessary, as constituting a part of the consideration.

We think this evidence was clearly competent. It was a statement by the witness that Mrs. Pope considered said advances as an indebtedness which she owed to her daughter, and which she desired to pay by including the same as a part of the consideration for the conveyance. If the amount of the consideration paid is challenged by the complainant, and an effort is being made to show that there was no valuable consideration, or a grossly inadequate consideration, for the conveyance, it is clearly competent to show by proof the

actual consideration passing. Nobody sought to discredit either Mrs. Brown or Mrs. Pope as to the amount of the advances and the purposes, and this was clearly testified to by Mrs. Brown.

Mrs. Pope died before the case was heard. This evidence by Foster V. Brown was corroborative of the contention made by these defendants that the relation of debtor and creditor as to these items existed between Mrs. Brown and her mother. We do not think that this evidence falls within the rule of hearsay evidence; rather, is it evidence to show the expressed intention of Mrs. Pope to pay these debts, and to include the same as a part of the consideration for the conveyance. We are therefore of the opinion that this evidence was competent and it was error for the Court to exclude the same.

This brings us to a consideration of the real question involved in this litigation, and that is, whether under the facts as shown by the record, the conveyance of the 27½ acres of land by Mrs. Pope to Mrs. Brown was fraudulent in law, or operated as a constructive fraud, so as to entitle complainants to have the deed set aside as decreed by the chancellor.

For appellant it is urged that there were no facts or circumstances in the record that tended to show that Mrs. Brown knew, or had reason to believe, that her mother was insolvent at the time she made this conveyance; that there is nothing in the record to warrant the conclusion that Mrs. Brown was put upon notice to make inquiry to ascertain the actual financial condition of her mother at the time she accepted the deed to this property. It being further contended for appellants that Mrs. Brown paid a fair value for this property and that the consideration as shown by the proof was a reasonable price for the property, and not so inadequate as to entitle a conclusion of a fraud in law.

In this connection the appellants contend that the amount of money expended by Mrs. Brown in the payment of her obligations and for her support after the conveyance, formed a part of the consideration which Mrs. Pope received for making the conveyance, and that it was a part of the agreed consideration, although not expressed in the deed, that Mrs. Brown did support her mother during her life time, and that all the items of the expense incurred by Mrs. Brown following the conveyance, and shown by the record to have been paid by Mrs. Brown on account of her mother after the conveyance was made was the carrying out of the agreement between the parties at the time Mrs. Pope agreed to make the conveyance, and therefore constituted a valid consideration for the conveyance.

For appellees the contention is made that conceding that the conveyance in question was not fraudulent in fact, that it was a fraud in law, and that the chancellor was not in error in so holding.

Under this contention it is urged that the facts disclose that Mrs. Brown knew, or should have known, at the time she accepted the deed,

that her mother was insolvent, and that it was her duty to have investigated and ascertained the financial condition of her mother at the time the conveyance was made. It being further contended by appellees that Mrs. Pope, the vendor, was actually insolvent at the time she made the conveyance; that the mortgaged property securing the debts which she had assumed, and the other property which she then owned, and all of which was encumbered, was encumbered for more than its value. It being further contended for appellees that the chancellor was not in error in excluding from the lien of Mrs. Brown any amounts advanced by her to her mother prior to the execution of the deed, and that the relation of debtor and creditor did not exist between them. It being further contended that in no event could payments made by Mrs. Brown on account of her mother, including medical attention, hospital bills, and expenses be considered as a part of the consideration for the conveyance.

▮▮ A consideration of the respective contentions of the respective parties necessitates a brief review of the facts.

At the time this conveyance was made to Mrs. Brown by her mother to the 27½ acres, Mrs. Pope was then indebted to complainant for the amount of the encumbrance debts on the two Madison avenue pieces of property. When she purchased this property from the Coxes, it was so encumbered, and as a part of the consideration for the purchase, Mrs. Pope assumed the payment of these mortgage debts. She also owned other pieces of real estate in the city of Memphis, and that property was also encumbered to about the sum of $1,500. The 27½-acre tract, made the subject of this litigation, was encumbered for the sum of $2,500 principal and the accrued interest thereon of $150, and also by certain delinquent taxes. All of this property so owned by Mrs. Pope in her own right was encumbered. One of the residences on Madison avenue was encumbered for $5,000 and the other for $5,500.

The evidence is somewhat conflicting as to the probable market value of the Madison avenue property on which complainant held the mortgage to secure said debts at the time the conveyance was made by Mrs. Pope to Mrs. Brown of the 27½-acre tract.

We think that by a preponderance of the evidence it was shown that at that date the Madison avenue property had a value of approximately $5,500 each, or about $11,000 for the two pieces of property, which was about the amount of the encumbrance debt. However, it appears that in 1930 at the time the encumbrance debt was put on this property, these two pieces of property were appraised at approximately $23,000, and at that time the complainant exacted of the then owner that insurance on the two respective buildings be carried for the benefit of the holder of the mortgage debt. Fire insurance in the amount of $8,300 was carried on one piece of property, and the sum of $6,000 on the other.

It is also shown that there was rapid depreciation in this property between February, 1930, the date of the first note, and January, 1932, and that this property had depreciated in value to the estimated values as fixed by the witnesses of approximately $11,500. It is not shown the market value of the other pieces of property owned by Mrs. Pope encumbered for $1,500 at the date of the conveyance of the 27½ acres to Mrs. Brown.

While it is true that at the foreclosure sale the two pieces of Madison avenue property brought only $3,000 each, or a total of $6,000. Yet it is also true that this was a forced sale under the respective trust deeds for cash, and at a time when the market was greatly depressed.

We cannot say that the price at which the property was sold under such conditions was the real market value of the property, although the foreclosure sales were valid and the consideration paid was not so grossly inadequate as to shock the conscience of the court so as to warrant a setting aside of the foreclosure sales. The fact remains that both Mrs. Brown and Mrs. Pope thought that this property was worth considerably more than the encumbrance debts thereon at the time Mrs. Pope conveyed the 27½ acres here involved to her daughter.

We cannot say from the evidence in this case that Mrs. Pope was actually insolvent on January 8, 1932. We can say that under all the evidence, the conclusion is warranted that both Mrs. Pope and Mrs. Brown considered that Mrs. Pope was entirely solvent, in that they both believed that Mrs. Pope had a substantial equity in the Madison avenue property, and also the other pieces of property then owned by Mrs. Pope and encumbered for about $1,500. Nor can we say that the record shows that as a fact Mrs. Pope was insolvent on January 8, 1932. The foreclosure was had later in 1932, and the price at which the property sold at the foreclosure sale cannot be taken as conclusive proof as to the actual value of the property on January 8, 1932.

As above stated, we think the preponderance of the reliable evidence is that the Madison avenue property was worth at least $11,000 or $12,000 on January 8, 1932. It is true that Mrs. Pope did not have any ready money, and it is very probably true that because of the debts which she owed and had assumed, it would have been difficult for her to have obtained additional loans on this encumbered property. She did not have the money with which to pay interest and taxes, but this does not mean that she was insolvent. She could have had a substantial equity in the encumbered property, and yet she could have been in such financial straits that she could not make the value of her equity in this property available to meet other obligations.

Mrs. Brown testified that she did not know or have any reason to believe that her mother was insolvent at the time the conveyance

to her was made. She knew that her mother was in financial stress, but she also knew that her mother owned several pieces of valuable property in Memphis, but did not have any reason to believe that her mother's indebtedness exceeded the value of this property.

The chancellor found that there was no fraud in fact. This was the equivalent to a finding that both Mrs. Pope and Mrs. Brown were in the utmost good faith and without any fraudulent intent to hinder or delay creditors in the collection of their debts at the time the conveyance of the property here involved was made.

Mrs. Pope was an old lady. A letter to her daughter shortly before this conveyance was made discloses that she had become seriously apprehensive. She was unable to meet the interest payments and to keep the taxes paid up on the 27½-acre tract on which was situated her home in Memphis. She was afraid of losing that property, and knew that her daughter, Mrs. Brown, was in financial condition to protect the property so that she would not be deprived of a home in the future.

We fully concur with the finding of the chancellor to the effect that there was no actual fraud connected with this transaction. Several outstanding citizens of the city of Chattanooga, the home of Mrs. Brown, testified to her excellent character, and there appears to be no attack made upon the veracity of Mrs. Brown. Nor could there have been under the facts of this record.

The question as to the value of the 27½ acres at the time this conveyance was made presents one of the highly controversial issues. Two witnesses for complainants testified that the property was worth approximately $15,000 or about $600 per acre. It was acreage property, badly located for desirable subdivision purposes, except, probably, for negro subdivisions.

Two witnesses for the defendants testified on the subject of the value of that property. Both of these witnesses were real estate men of long experience in real estate values in the city of Memphis, and it was conceded that they were qualified to testify on the subject of the values of this property. One of these witnesses testified that the 27½ acres had a market value of about $300 per acre on January 8, 1932. The other testified that it had a market value of about $250 per acre.

If each of these four witnesses were equally qualified as witnesses on the subject of the value of this property, it would show that it was a question of considerable speculation as to what the property was actually worth at that time. However, giving equal credence to each of these four witnesses, it would appear that about $11,500 would be a fair average.

We come now to consider the real consideration passing between Mrs. Pope and Mrs. Brown for this conveyance. Mrs. Brown and her husband, Mr. Foster V. Brown, both testified that Mrs. Brown had

advanced to her mother, over a period of several years, different sums of money. There is no dispute in the record as to these advancements made by Mrs. Brown to her mother, or the amounts of the same, which advances had been made prior to the execution of the deed. These advances consisted of the following items:

She advanced to her mother $1,000. She paid for wiring the home of her mother, situated on this 27½ acres, a sum of $300. She had advanced to her mother the sum of $500 to defray expenses to Hot Springs, Arkansas, on account of the illness of her mother. She also paid a hospital bill in Memphis for $150 for her mother, and another item for $55. All the items so advanced amounted to the sum of about $2,355.

The chancellor found that these advances did not constitute debts, and that the relation of debtor and creditor did not exist between Mrs. Brown and her mother as to these advances, and further held that the statute of limitations had run against these items. If this $2,355 in antecedent debts be added to the mortgage debt assumed and paid by Mrs. Brown, amounting to $2,650, and the delinquent taxes against the property, which was allowed by the chancellor, amounting to $731.85, it would amount to a consideration of approximately $5,600, without including debts and expenses incurred by Mrs. Brown on account of her mother subsequent to the date of the execution of the conveyance.

We think the chancellor was in error in holding that all of these advances made by Mrs. Brown to her mother prior to the execution of the deed did not constitute debts owed by Mrs. Pope to Mrs. Brown, and holding that the relation of debtor and creditor as to these items did not exist at the time of the execution of the deed.

Mrs. Brown testified that they did constitute debts. The letter of Mrs. Pope to Mrs. Brown clearly indicated that Mrs. Pope considered that they were just debts, and not mere gifts, but the deed itself specifically recites as a part of the consideration these advances made by Mrs. Brown to Mrs. Pope.

The money was actually advanced or expended by Mrs. Brown for her mother and at a time when Mrs. Brown had every reason to believe that her mother was abundantly solvent. It is true that she did not take evidences of this indebtedness, but she did hold the canceled checks and paid bills. It is also true that she did not have some of the receipted bills or checks at the time she testified. But it does not show that she did not have them at the time the conveyance was made. If, after the conveyance was made, she was not careful to preserve these papers, it was because these antecedent debts had been paid as a part of the consideration for the conveyance. If Mrs. Brown considered these advances as debts against her mother, and she testified emphatically that she did, and as Mrs. Pope considered that they were just debts which she owed to her daughter,

and they both recognized these advances so made as loans, we cannot escape the conclusion that the relation of debtor and creditor did exist as to these items between Mrs. Brown and her mother at the time the conveyance was made.

■ It is not seriously contended that the statute of limitations would enter into the consideration, since the right to rely upon the statute of limitations is a personal right and Mrs. Pope alone, or her personal representative, could make that question. 17 R. C. L., sections 240, 241, and cases cited.

If Mrs. Pope, recognizing the justness of these advancements, saw proper to waive the statute of limitations as to these items of indebtedness, it was her prerogative.

■ We think it well settled that a conveyance made for a valuable consideration, without fraudulent intent upon the part of the parties thereto, and by which the vendor, in good faith, and without intending to render herself insolvent by such conveyance, conveys property, it is neither fraudulent in law nor fraudulent in fact. Sanders v. Logue, 88 Tenn., 355, 12 S. W., 722.

In vol. 27 C. J., p. 499, section 165, the rule is stated that:

"A debtor is not deprived of his right to sell for a valuable consideration, a part or all of his property, merely because of his financial embarrassment or insolvency, even though such sale may hinder or delay creditors. The fact that the grantor is insolvent at the time he executed the conveyance is not of itself a ground for setting aside the conveyance. Such conveyance is not fraudulent unless there is a fraudulent intent which is common to both seller and purchaser."

The same author then proceeds to state:

"While there is authority to the contrary, it is generally held that if the indebtedness is sufficiently secured, it should not be taken into consideration, and that it is immaterial, where the land conveyed was sufficient to satisfy the debt, that it was afterwards sold by the creditor and bought in by him at a nominal price, so that the grantor was liable for the deficiency."

Even though it be said that insolvency of the vendor at the time the conveyance was made would warrant the setting aside of the deed as a fraud in law, as above pointed out, we cannot agree that the record in this case shows that Mrs. Pope was actually insolvent at the time she conveyed this 27½ acres to her daughter, and for the reasons hereinbefore stated. Nor do we think that the consideration for the conveyance is below the market value of the property at the time of the conveyance, would, of itself, constitute a fraud in law so as to entitle the setting aside of the conveyance.

In the present case, including the antecedent debts, made a part of the consideration, without reference to the subsequently discharged obligations for her mother by Mrs. Brown, and including the encumbrance debt with the interest and the deliquent taxes, which were

liens on the property, Mrs. Brown actually paid to her mother as the consideration for this conveyance, the sum of approximately $5,600.

The value of the property on the date of the conveyance, as shown by the evidence, was decidedly problematical and speculative. We doubt exceedingly, from the evidence in the case, that this property could have been sold at a forced sale for cash on January 8, 1932, for more than the amount actually paid by Mrs. Brown. This conclusion rests not alone on the evidence as to its probable market value on that date, but rests somewhat upon the fact as disclosed by the record that the Madison avenue property, at a forced sale about a month later, sold for only about half of the market value of the property as estimated and fixed by the witnesses who testified on that subject. However this may be, we do not think that the difference between the market value of the property as determined by the usual rules, and the actual amount paid for the property by Mrs. Brown, shows such inadequacy of consideration as to make the transaction fraudulent in law.

In this view of the case, it becomes immaterial to consider the question of the future support and maintenance of Mrs. Pope by Mrs. Brown as entering into the consideration for the conveyance. However, we will say that the funeral expenses of Mrs. Pope, amounting to about $600, would have been a preferred claim against the estate of Mrs. Pope, and would have taken priority over the debt of complainant, even if Mrs. Pope had not made a conveyance of the property prior to her death. To this extent complainant was not prejudiced by the conveyance. This amount added to the amount actually paid by Mrs. Brown, including the antecedent debts, would bring the amount to about $6,230 and does not include the item of $174 to the North Memphis Bank.

We are therefore of the opinion that the chancellor was in error in holding that this conveyance constituted a fraud in law, and in setting aside the same, and ordering the property sold.

It results that the assignments of error are accordingly sustained, and the decree of the chancellor to this extent is reversed.

Appellee will pay the cost of this appeal.

Anderson and Ketchum, JJ., concur.