MRS. VAUGHN VICK, Complainant-Appellee, v. G. T. VICK, Defendant-Appellant.—449 S.W.2d 717

Western Section.   August 19, 1968.

Certiorari Denied by Supreme Court March 3, 1969.

Taylor & Keeton, Huntingdon, for appellant.

Peeler & Hollis, Camden, for appellee.

CARNEY, J. The complainant below, Mrs. Vaughn Vick, is the widow of Edwin Vick who died intestate in Benton County on August 15, 1956. She brought suit in the Chancery Court of Benton County against her father-in-law, G. T. Vick, to gain title to a house and lot or in the alternative for a decree establishing her equity in said house and lot. The Chancellor found that the value of

the lot had been enhanced to the amount of $12,000 by the construction of a home. He gave judgment to the complainant for $12,000 less $3,700 balance due on a loan from the defendant to complainant's husband leaving a net judgment of $8,300 with interest from the date of filing the bill. He also declared a lien on the house and lot and ordered a sale thereof. The defendant G. T. Vick, has appealed and assigned error.

The facts surrounding the erection of the home are not in controversy. The defendant, G. T. Vick, who is now 77 years of age, is a very substantial farmer of Benton County, Tennessee. He had two sons, Edwin G. Vick, husband of the complainant, and T. L. Vick who lives at Bruceton, Carroll County, Tennessee. The father and the two sons were engaged in farming and related enterprises such as the operation of a saw mill, bulldozer, hay baler, cotton, corn and livestock. They operated in both Benton and Carroll County, Tennessee.

Shortly after the complainant, Vaughn Vick, and Edwin G. Vick were married on May 4, 1946, it was decided that since the brother, T. L. Vick, was living in Bruceton, Carroll County, it might be better that Edwin G. Vick and the complainant, Vaughn Vick, move from Bruceton to the farm of G. T. Vick in Benton County for a more efficient business operation. Accordingly, they moved into a small farm house owned by the defendant, G. T. Vick. They lived in this small house for several years.

Edwin G. Vick and wife, Vaughn Vick, had two boys, the eldest born in 1948 and the youngest born in December, 1951.

In the fall of 1952 Edwin G. Vick and wife, Vaughn Vick, desired a more comfortable dwelling than the mod-

est cottage which they had been occupying. They had a fund saved up to build a house. The complainant testified that this fund, the exact amount is not shown, was in her name and that the father-in-law told her husband that if he would build close to Mr. and Mrs. G. T. Vick he would give them a deed to a building spot. There was complete harmony among the entire family unit. It was understood that in the division of Mr. G. T. Vick's property Edwin G. Vick would receive the farm on which the new dwelling for Edwin G. Vick and complainant was to be built. A spot was selected across the road and near the dwelling of Mr. and Mrs. G. T. Vick. No request was made by Edwin G. Vick of his father for a deed to the lot on which the house was to be built.

The erection of the home was somewhat a family enterprise. The brother, T. L. Vick, operated the bulldozer to dig out the basement; timber was cut from the lands of Mr. G. T. Vick and sawed to rough framing for the home; the costs of the finishing material and labor such as roof, sheetrock, doors, windows, heating, plumbing, etc. were paid by Edwin G. Vick and wife, Vaughn Vick. Edwin G. Vick and wife Vaughn, ran out of money and Edwin borrowed $5,500 from his father to complete the home.

The parties lived in the home from the spring of 1953 until August, 1956, when Edwin Vick died. Mrs. Vaughn Vick had worked at H. I. Siegel in Bruceton up until shortly before her oldest son was born in 1948 and she did not work any more until January, 1955, when she went back to work for Siegel. After the completion of the house and before his death in August, 1956, Edwin Vick repaid his father a total of $1,100 on the $5,500 loan.

Mrs. Vaughn Vick testified that during her husband's last illness he instructed her to use the $5,000 insurance money which was hers to finish paying off the indebtedness to his father so that she would have a home. Mrs. Vaughn Vick testified that after her husband's death she went to her father-in-law and asked the balance due on the loan to which he replied $4,400. She offered to pay him the balance of the $4,400 out of the insurance money and asked him for a deed to the property. She testified that Mr. Vick stated that he would not want to give her a deed to the property but would be willing to give her a deed to the property for her lifetime with remainder to her two children. He gave as his reason that she might sell the property to someone whom he would not like living there so close to him and Mrs. Vick or that she might marry someone else within a year or two and lose the property. After Mr. Vick refused to give her a deed to the property she asked him to pay her what she and her husband had invested in the property and likewise he refused to make any payment. Complainant suggested that she did not want to live in the house and that she wanted to move back to Bruceton near her work and to buy her a house that she could use as she pleased.

In August, 1957, Mrs. Vaughn Vick and her two children vacated the house and moved back to Bruceton, Tennessee, to live. Mr. Vick took immediate possession of the property and rented the house to a share cropper. He has had complete possession of the property continuously to the date of the trial. Negotiations between Mrs. Vaughn Vick and the defendant, G. T. Vick, remained at an impasse until shortly before the original bill was filed in this cause on August 14, 1963. Before filing the bill Mrs. Vaughn Vick and her eldest son, Dale Vick, had a

conference with Mr. G. T. Vick and asked him to pay them a total of $6,000 for their equity in the home, the complainant to receive $2,000 and each son to receive $2,000 to be held in a trust or guardian's account. Mr. G. T. Vick replied to his grandson that he and his brother would get the property anyway. Mr. Vick steadfastly refused to make a deed to the property unless Mrs. Vaughn Vick would agree to accept a deed to her for life with remainder to her two children and agree to live in the house and rear her children there.

Upon the trial Mrs. Vick introduced proof by a building contractor that the lot was enhanced to the amount of $12,000 by the brick home which she and her husband had built. A great deal of the work such as painting, etc. was done by Mr. and Mrs. Vick personally. The defendant, G. T. Vick, testified that in his opinion the house was worth only about $10,000 instead of $12,000 but did not offer any other testimony to contradict the testimony of the builder that it would have cost $12,000 to build the home. The lot was never staked off on the ground but Mrs. Vick described a lot in her original bill as running northerly with the west side of the Bruceton-Big Sandy Road 300 feet; thence west 250 feet; thence south 300 feet; thence east 250 feet to the point of beginning being the northeast corner of a barn lot.

Mr. Vick stated that he never promised his son a deed but he did tell him, "I told him there was a location and if he wanted to build on it, it's yours, go ahead and do it." (Bill of Exceptions, page 99) Also he testified that if his son had, in his lifetime, asked him for a deed he probably would have executed one.

Upon the trial Mr. Vick reiterated that he was perfectly willing for Mrs. Vick to have a deed to the property for

her lifetime so long as it went to the two boys at her death and that he was also willing to cancel the remainder of Edwin's debt which he made to finish building the house. Some reference was made in the testimony to other litigation between Mrs. Vaughn Vick and her father-in-law and possibly her brother-in-law, T. L. Vick, which followed the death of her husband, Edwin Vick, arising out of their family business operations. Mr. G. T. Vick expressly disclaimed any desire to live in the home himself being completely satisfied with his present home.

Complainant has filed three assignments of error as follows:

## "I

The Court erred in overruling the Pleas in Bar as to the Ten (10) year Statute of Limitation as to an equitable lien and a Plea based upon the Six (6) year Statute of Limitation, and a Plea as to the Statute of Frauds.

## "II

The Court committed error in overruling the Motion for a directed verdict made at the conclusion of the Complainant's testimony and at the conclusion of all the proof offered on behalf of the Complainant which Motion was renewed at the conclusion of all of the testimony.

## "III

The Court erred as a matter of Law in refusing to grant the Defendant's Application for a Jury trial in this Cause; said Application being made at the time the Court Ordered an oral hearing of this Cause."

██ The six year statute of limitation does not apply because the complainant brought suit within six years

after she vacated the premises. The statute of frauds, T.C.A. Section 23-201, does not apply because the seventh section of the statute of frauds is not in force in Tennessee and a trust in real estate may be based upon oral agreement. See Kelley v. Whitehurst, 37 Tenn.App. 360, 264 S.W.2d 1; Brantley v. Brantley, 198 Tenn. 670, 281 S.W.2d 668.

Appellant G. T. Vick insists that an action to enforce an equitable lien must be brought within ten years after maturity and that the time commences to run from the time complainant's right to make a demand was completed. We copy T.C.A. Sections 28-212 and 28-102:

"28-212. Period of validity of liens.—Liens on realty, equitable or retained in favor of vendor on the face of a deed, also liens of mortgages, deeds of trust, and assignments of realty executed to secure debts, shall be barred, the liens discharged, unless suits to enforce the same be brought within ten (10) years from the maturity of the debt."

"28-102. Commencement at time of right to make demand.—When a right exists, but a demand is necessary to entitle the party to an action, the limitation commences from the time the plaintiff's right to make the demand was completed, and not from the date of the demand."

■■ It is generally held that the statute of limitation does not begin to run in the case of a resulting trust until the trustee does some act hostile to the cestui. Fehn v. Schlickling, 26 Tenn.App. 608, 175 S.W.2d 37, citing Bogert on Trusts and Trustees, Vol. 4, Sec. 952. In case of a constructive trust the statute begins to run from the date when the wrongful and adverse holding begins

and is or should be known to the complainant. Fehn v. Schlickling, 26 Tenn.App. 608, 175 S.W.2d 37.

A confidential relationship existed between the complainant, Vaughn Vick, and her father-in-law and the other members of her family until her father-in-law refused to give her a deed to the property after the death of her husband and until he refused to make any adjustment with her on her interest in the property. Her suit was brought within a few days less than six years from the time her father-in-law took possession of the property and began renting it and appropriating the rents to his personal use. Mr. Vick, with commendable honesty, has at all times admitted that the house built on his property belonged to his son and his son's family and that the complainant had an interest therein.

A close question is presented whether the complainant is entitled to recover and receive the proceeds of the judgment individually to the exclusion of any rights of her children or whether she must recover as representative of her deceased husband. We have no doubt that Mr. G. T. Vick intended to give his son or his son and daughter-in-law a lot on which to build a home. He also gave them the timber for the rough framing.

We are impressed by the testimony of Mr. G. T. Vick that the delay for executing the deed was that it was understood in the family that Edwin Vick was to receive by inheritance or gift the entire farm which included the lot on which he built the home and that there was no necessity to consider the execution of a deed to the lot itself. When the home was being built, the premature death of Mr. Edwin Vick was in no manner contemplated by any of them. All three families were in complete harmony.

There was no attempt upon the trial below to determine the value of labor performed by the complainant, Mrs. Vaughn Vick, nor cash contributions made by her in erecting the dwelling. Unquestionably she did make some contributions both in labor and in money. It would be unjust enrichment to the defendant to deny the complainant the right of any recovery by the complainant and her two sons. On the other hand, there is no evidence in the record from which this court can find that there was ever any agreement, express or implied, between Edwin Vick and is father that Edwin Vick should own title to the lot on which the house was built as tenant by the entirety so as to enable the complainant to recover the full amount of the judgment in the present cause as the surviving tenant by the entirety.

There is no conflict in the evidence upon the trial below which would authorize this court to reverse the cause for a jury trial as provided by T.C.A. Section 21-1011. Union City & Obion County Bar Association v. Waddell (1947), 30 Tenn.App. 263, 205 S.W.2d 573.

This litigation results from the failure of Edwin Vick and his father to have a firm and clear understanding as to the title to the lot on which he was building a home and from the failure of the parties to anticipate that Edwin Vick might predecease his father, G. T. Vick. We feel that justice will be done in this case by overruling all three assignments of error and modifying the decree of the lower court so as to provide that one-half of the judgment and interest shall inure to the benefit of the complainant, Mrs. Vaughn Vick, individually, and one-half to her as administrator of her deceased husband. The decree of the lower court as modified herein will be affirmed.

The costs in the court below will be taxed against the appellant, G. T. Vick. The costs in this court will be taxed two-thirds to G. T. Vick and one-third to Mrs. Vaughn Vick. T.C.A. Section 20-1621. Decree will be entered accordingly.

Avery, P. J.(W.S.), and Bejach, J., concur.