**Mrs. Martha B. LINDER, Complainant-Appellant,**

v.

**Mrs. Anna Ruth LITTLE, Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section.

June 30, 1972.

Certiorari Denied by Supreme Court
Feb. 5, 1973.

Cameron & Jared, Cookeville, for complainant-appellant.

Roberts & Turnbull, Livingston, Neal & Craven, Jamestown, Langford, Mitchell & Langford, Cookeville, for defendant-appellee.

## OPINION

TODD, Judge.

The complainant, Mrs. Martha B. Linder, has appealed from the Chancellor's decree dismissing her suit against the defendant, Mrs. Anna Ruth Little, to declare certain deeds void, or, in the alternative, to enforce an oral trust upon property conveyed to defendant.

Complainant is the widow of W. E. Linder. Prior to May 29, 1965, complainant and her husband were the owners of three tracts of land in Overton County, Tennessee, which are designated for convenience as Tracts Nos. 1, 2, and 3, respectively.

On May 29, 1965, complainant and her husband executed a deed to the defendant conveying to her Tracts 1 and 2. On the same day they conveyed Tract 3 to defendant by a separate deed.

On or about May 29, 1965, defendant borrowed $15,000.00 which was used to discharge liens upon Tracts 1, 2, and 3.

On November 1, 1965, the husband of complainant lost his life in an accident.

On March 11, 1966, complainant filed her original bill alleging the foregoing facts and that:

"At the time of said conveyances, complainant's husband, the said W. E. Linder, was heavily involved in debt, and had considered a voluntary petition in bankruptcy, but complainant had discouraged the same, taking the position that together complainant and her husband could eventually discharge the debts. At the time of the conveyances, complainant assumed that her husband was making a bona fide sale of said properties to his sister, the defendant, Anna Ruth Little, and that the proceeds would be used to discharge his debts. Complainant executed the deeds because requested to do so by her husband, and did not, at the time, understand the true nature of the transactions.

"During the summer of 1965, some two months after the execution of said deeds on May 29, 1965, complainant learned for the first time that the conveyances to defendant of May 29, 1965 were fraudulent conveyances for the purpose of placing said property beyond

the reach of her husband's individual creditors. . . .

. . . . . .

". . . Complainant avers that the defendant, Mrs. Anna Ruth Little, participated fully in the fraudulent scheme and had full knowledge of the same.

"Complainant further charges that it was a part of the agreement between her husband, the said W. E. Linder, and his sister, the said Anna Ruth Little, that the said defendant would reconvey said properties upon the request of either W. E. Linder or his wife, the complainant, Martha B. Linder."

The bill prayed for a decree declaring the aforesaid deeds to defendant to be void ab initio, or, in the alternative, that defendant be required to reconvey the property to complainant because of a resulting trust.

The answer of defendant denied any conspiracy, fraud, wrongdoing or trust agreement, and alleged that she purchased said property for a fair consideration.

After hearing oral evidence, the Chancellor filed a memorandum opinion wherein he held:

"I am of the opinion that the 'clean Hands' maxim of courts of equity repels the complainant in this cause. She testified that she made no inquiry at all from her husband regarding the conveyance with which we are concerned in this case. I hold that the complainant was chargeable with notice of all the pertinent facts which were discoverable by proper inquiry. It is quite significant in this case that this is not a creditor's suit seeking to set aside a fraudulent conveyance. On the other hand, it appears to me that this is a suit by the complainant seeking to set aside a fraudulent conveyance made by herself.

"The complainant is not a creditor of her deceased husband's estate and is not, as I see the case, entitled to maintain a suit to rescind the deed in question.

. . .

. . . . . .

"The complainant has failed to prove by a greater weight of the evidence that the consideration paid was so inadequate as to constitute fraud.

. . . . . .

"In my opinion there is not sufficient evidence of the clearest and most convincing character to establish a resulting trust as insisted by the complainant. The law, as I understand it, is that a presumption prevails in favor of the written deed. The complainant's case is founded on the alleged statements of her deceased husband, Ewing Linder, made after the deed to his sister, Mrs. Little. I doubt the competency of that evidence which I heard subject to defendant's exception because said statements violate the hearsay rule and because they appear to be self-serving declarations. I fully considered said evidence however in deciding the issues in the case."

Complainant's bill was dismissed, and she has appealed.

There are four assignments of error which will be discussed in reverse order.

The fourth assignment of error is as follows:

"It was error for the learned Chancellor to fail to rule on the admissibility of the testimony as to statements of the deceased made both prior and subsequent to the conveyances, but to assert that he had considered them fully when to have done so would have demanded an opposite conclusion."

It will be observed from the opinion of the Chancellor, quoted supra, that he "doubted the competency" of the statements of the deceased, but fully considered them in deciding the issues. That is to

say, even if the questioned evidence were competent, it was not sufficient to change the Chancellor's finding of fact.

The evidence of statements of deceased, all of which was objected to, was in substance as follows:

The complainant, widow of W. E. (Ewing) Linder, testified that deceased *did not* tell her anything about the nature or consideration of the transaction prior to or at the time she (complainant) joined him in signing the two deeds to the defendant; that several months later in Atlanta she and deceased had a heated discussion wherein she questioned the transaction and he (deceased) told her (complainant) that he had an arrangement with defendant whereby he would pay interest and taxes and use the farm and his sister would reconvey it upon request; and that he later told her (complainant) on the telephone that a terrible quarrel had taken place between him and his sister wherein she had refused to reconvey the land to him.

Dalton Maynard, a mail carrier, testified that shortly before his death, deceased asked him (Maynard) about a renter for "his place."

Gentry Copeland testified that deceased was doing some work on the farm just prior to his death.

Roy Scott testified that about five or six weeks before his death, deceased said he was going to sell his home, but not his farm.

Harris Copeland testified that he saw deceased "bushhogging" on the farm and that deceased told him his sister was "trying to hold the place" and that he would "kill her before she got it."

Bobby Linder, son of complainant and deceased, testified that, in May 1965, his father told him that he had been thinking about letting his sister hold his property until he could pay his creditors; and that deceased later told him the deeds had been made to his sister but she would "give it back."

J. H. Reneau, a practicing attorney, testified that, sometime in 1965, deceased came to him and discussed his strained financial condition; that deceased discussed the possibility of deeding his property to a relative who would deed it back; that he mentioned his father and his sister in this connection; and that later in the year, about September, deceased told him he had "worked the matter out" by transferring the property.

Millard Oakley, a practicing attorney, testified that W. E. Linder had consulted him about making a conveyance of his property to put it out of reach of his creditors, and later discussed bankruptcy.

■ A statement of deceased contemporaneous with the execution of the deeds to defendant might be admissible as a part of the res gestae, or as a statement showing mental condition or intent at the time of execution of the deeds. Otherwise, all of the above evidence was and is inadmissible as a self-serving hearsay statement of a deceased not included in any of the presently recognized exceptions to the hearsay evidence rule.

Appellant cites Anderson v. Nichols, 39 Tenn.App. 503, 286 S.W.2d 96 (1955), which was a suit to avoid an allegedly fraudulent deed from deceased to a man who was subsequently convicted of killing deceased. After reciting a number of circumstances indicating a fraudulent imposition upon deceased, including the failure of the parties to promptly record the deeds, this Court approved the admission of evidence that Anderson had referred to the deed as an option. The authorities cited by this Court in Anderson v. Nichols all refer to the exceptions to the hearsay rule for evidence of intent. In the California case of Kelly v. Bank of America, 112 Cal.App.2d 388, 246 P.2d 92, cited in Anderson v. Nichols and relied upon by appel-

lant, the issue was the intent of delivery of a deed; i. e., whether it was delivered with present intent to part with title.

In the present case, no issue is made of the intent of deceased (and of complainant) to part with title. The only issues are (a) whether the purpose (not intent) of the deed was fraudulent (as to creditors) and (b) whether there was a collateral oral agreement by the conveyee (defendant) creating a duty upon her to reconvey upon demand. Neither of these issues may be resolved by evidence of self-serving, hearsay, statements of deceased.

Appellant relies upon Jones v. McMurray, 25 Tenn.App. 47, 150 S.W.2d 713 (1941), which is a will case and inapplicable. Appellant evidently intended to cite the preceding case, Cannon v. Chadwell, 25 Tenn.App. 42, 150 S.W.2d 710 (1941), which conforms to appellant's brief. In the latter case, a suit for rescission, the purchaser of a shop assumed certain listed debts which were represented to be all of the debts of the shop. In showing that the good will of the shop had been materially damaged, complainant was permitted to testify of demands made upon her for debts not listed or assumed. This Court approved the admission of such evidence only for the purpose of showing that complaints had in fact been made, not to show the factual content of the complaint.

Appellant also cites Bank of Commerce & Trust Co. v. Pope, 20 Tenn.App. 652, 103 S.W.2d 586 (1936), which was a suit to set aside as fraudulent a deed from the deceased, Mrs. Pope to her daughter, Mrs. Brown. This Court held to be admissible the testimony of Mr. Brown that, *the night preceding the execution of the deed,* he heard Mrs. Pope and Mrs. Brown discuss the consideration for the conveyance. In that case, the conversation occurred *the night before,* and *included the conveyee-defendant.* None of the statements attributed to Mr. Linder in the present case occurred in any proximity to the execution

of the deed to Mrs. Little or in her presence.

Appellants rely upon Savage v. Savage, 4 Tenn.App. 277 (1927) which was a suit to establish that the deceased, C. B. Savage, had accepted a conveyance in trust for complainants. This Court held that statements of the deceased, C. B. Savage, admitting the trust, were competent evidence of the trust and were not within the exclusionary rule of the "Dead Man's Statute." Such statements of the deceased were admissible as declarations against interest, or disparagement of title. Oliphant v. McAmis, 197 Tenn. 367, 273 S.W.2d 151 (1955); Tom Love Grocery Co. v. Maryland Casualty Co., 166 Tenn. 275, 61 S.W. 2d 672. The rule could not possibly be extended to admit hearsay *self serving* declarations in contradiction of the effect of written, recorded, deeds. Such an extension of the rule would place in jeopardy the title of any person once the conveyor had died and his alleged oral statements were produced.

Likewise, in Brunson v. Gladish, 174 Tenn. 309, 125 S.W.2d 144 (1939), and Terrell v. Terrell, 200 Tenn. 289, 292 S. W.2d 179 (1956), the hearsay statements were made by the party charged with the trust, and were therefore declarations against interest.

Appellant cites no authority, and none has been found, that, where a conveyor has executed an apparently final conveyance, and thereafter orally impugns the finality of the conveyance, such oral, self serving, statements should be admitted in evidence after the death of the conveyor.

Except as indicated, evidence of all of the oral, hearsay, self-serving, statements of deceased was inadmissible, and should have been excluded.

From the discussion of the third assignment of error, hereafter, it will be apparent that this Court agrees with the statement of the Chancellor that the hearsay state-

ments of deceased, even if admitted and considered, would not change the disposition of this controversy.

The fourth assignment of error is respectfully overruled.

The third assignment of error is as follows:

"It was error for the learned Chancellor to hold that appellant had failed to establish the creation and existence of an oral trust or resulting trust by sufficient evidence of a clear and convincing nature when the same was established by the overwhelming weight of the evidence."

The principal evidence supporting the alleged trust agreement has been heretofore summarized and, for the most part, excluded from consideration. Other evidence in this respect consisted of evidence of alleged statements made by the defendant, Mrs. Little, and certain circumstances.

The complainant, Mrs. Linder, testified that, the day following the funeral, she requested Mrs. Little to reconvey the property and she changed the subject; that, thereafter, in her (complainant's) presence, Bobby Linder asked Mrs. Little what she planned to do about the property and she responded that she would convey the mountain property to Bobby, but would not reconvey the farm; that when Bobby reminded her of her "former promises" she said "that was before Ewing died" and "things are different now." Mrs. Linder also testified that, after May 1965, Mr. Linder did certain work on the farm and electric bills remained in his name.

Bobby Linder testified that, in August 1965, he (Bobby) had a conversation with Mrs. Little in which she said she would like to reconvey the farm because she wanted another farm and couldn't borrow more so long as she owed on the farm deeded to her by W. E. Linder and wife; that, after the death of W. E. Linder, he (Bobby) told Mrs. Little that he and his

mother had arranged to borrow the money to get the property back, and she said she would "do it at the proper time"; that on another occasion Mrs. Little offered to deed the mountain property to him and refused to reconvey the farm; and that on said latter occasion she was reminded of her promise to W. E. Linder, and she responded "he's dead" and that she had changed her mind.

Millard Oakley testified that, shortly after the funeral, Mrs. Little stated to him that she would reconvey the property "at a proper time."

In contradiction of the foregoing evidence, the defendant, Mrs. Little, testified that the entire transaction was arms-length and bona-fide; that her brother had been trying to sell the mountain property and farm; that she had tried to help him sell it; that he was in financial difficulties; that she had paid interest of $537.50 for him on May 4, 1965; that, at his solicitation, she agreed to buy the farm and mountain property for $15,000.00; that he went with her to the bank to arrange a loan in her name for $15,000.00; that $2,500.00 of the purchase price was paid to W. E. Linder and by him used to discharge the mortgage debt on the mountain property; that the mortgage on the farm was found to be $12,610.87, instead of $12,500.-00 as supposed, but she paid the entire $12,610.87, increasing the cost of the transaction to $15,110.87; that she had spent $3,918.00 in improving the farm and had paid $310.00 taxes for 1964, 1965 and 1966; that she allowed W. E. Linder to go back and work on the farm because it was the place where they were raised and she thought he wanted to do it for sentimental reasons. Mrs. Linder categorically denied any and all statements attributed to her regarding a reconveyance of the property.

A. F. Officer, Jr. and A. B. Norman, bank officers, corroborated Mrs. Little's testimony regarding the transaction of transferring the property from Mr. Linder to Mrs. Little.

The only other evidence reflecting upon the issue was testimony as to the value of the land. Complainant offered evidence of values from $65,000.00 to $80,000.00. Defendant's evidence in this respect was from $13,500.00 to $15,000.00.

■ The decree of the Chancellor comes to this Court for review de novo accompanied by a presumption of correctness unless the evidence preponderates otherwise. § 27–303, T.C.A.

■ Any conflict in testimony requiring a determination of the credibility of witnesses is for the Trial Court whose determination is binding upon the Appellate Court unless other real evidence compels a contrary conclusion. Balsinger v. Town of Madisonville, 222 Tenn. 272, 435 S.W.2d 803 (1968); State ex rel. Spoone v. Mayor and Aldermen of Morristown, 222 Tenn. 21, 431 S.W.2d 827 (1968); Weeks v. Summerlin, Tenn.App., 466 S.W.2d 894 (1970); Hull v. Evans, 59 Tenn.App. 193, 439 S.W.2d 110 (1968) and authorities cited therein.

The Chancellor's opinion, quoted supra, indicates clearly that he found that complainant had not sustained the factual allegations of her bill, and this Court concurs in that conclusion.

Appellant cites numerous authorities as to the law of resultant trusts, but none of these authorities will supply evidence.

■ It is true, as insisted by appellant, that a trust may be created by an oral agreement made contemporaneously with the execution and delivery of a deed absolute on its face. Brantley v. Brantley, 198 Tenn. 670, 281 S.W.2d 668 (1955); Vick v. Vick, 60 Tenn.App. 600, 449 S.W.2d 717 (1968); Kelley v. Whitehurst, 37 Tenn. App. 360, 264 S.W.2d 1 (1953).

■ However, the declaration of trust by the grantor must be before or contemporaneous with the conveyance. Adrian v.

Brown, 29 Tenn.App. 236, 196 S.W.2d 118 (1946).

■ And, proof of a parol trust must be of the clearest and most convincing character. It must be so clear, cogent and convincing as to overcome the opposing evidence coupled with the presumption that obtains in favor of the written instrument. Hoffner v. Hoffner, 32 Tenn.App. 98, 221 S.W.2d 907 (1949) and authorities cited therein.

■ The evidence offered by complainant herein simply does not aggregate the necessary quantity required by the cited authorities.

The third assignment of error is respectfully overruled.

The first and second assignments of error are as follows:

### I.

"It was error for the learned Chancellor to hold that the 'clean hands' maxim of courts of equity repels the appellant in this cause and that, upon execution of the deeds, she was chargeable with notice of all pertinent facts discoverable by a proper inquiry.

### II.

"It was error for the learned Chancellor to fail to apply the equitable doctrine of unjust enrichment of appellee as a counter balance against repelling appellant for allegedly coming into a court of equity without clean hands."

Appellant is particularly grieved because the opinion of the Chancellor found that she did not come into court with clean hands. This finding of the Chancellor was based upon technical or constructive grounds (failure to make inquiry) and not upon any actual misconduct of complainant.

For whatever comfort it may be to complainant, this Court is unable to agree with the Chancellor that complainant was repelled by the "clean hands doctrine."

Complainant testified without contradiction that she pursued her career without interference from her husband; that he dealt with his business and their jointly held property without question or interference from her; that she signed the deeds to Mrs. Little without question in accordance with her custom; that, prior to the execution of said deeds, she had no information that they were fraudulent, fake or "a sham"; that she was jointly liable on the $2,500.00 mortgage on the mountain land and the $12,610.87 mortgage on the farm land; that she was released and discharged when said mortgages were paid upon transfer to Mrs. Little; that she thought it was a bona fide transaction; that the conveyances did not render Mr. Linder insolvent; and that she did not insist that the deeds were fraudulent as to her (Mrs. Linder).

It must be recognized that, although Mr. and Mrs. Linder owned the subject property by the entireties, each had a distinguishable interest therein. That is, only the interest of *Mr. Linder* was subject to the claims of *his creditors*; and the interest of Mrs. Linder was not subject to the claims of Mr. Linder's creditors. Even though the transfer of Mr. Linder's interest might defeat and defraud his creditors, the transfer of Mrs. Linder's interest would in no wise defeat or prejudice Mr. Linder's creditors.

■ Therefore, even if Mr. Linder's transfer of his interest had been fraudulent against his creditors, the simultaneous action of his wife in conveying her interest was not fraudulent, even if she had known of a fraudulent intent in respect to her husband's conveyance.

The first assignment is therefore sustained; however this action will not affect the disposition of the appeal.

■ The second assignment is founded upon the premise that Mr. Linder's conveyance to his sister for a fraudulent purpose ought to be invalidated and the transaction reversed because its residue is an unjust enrichment of defendant, Mrs. Little. This insistence comports neither with the logic nor the evidence of the case.

It must first be assumed that Mrs. Linder willingly conveyed *her interest* for a valid consideration; i. e., the payment and discharge of her debts on the property. This being true, the conveyance by Mr. Linder of his interest becomes moot, for he has since died and the interest of Mrs. Linder which she conveyed has now matured into an absolute estate. Thus even if Mr. Linder's conveyance should be invalidated and set aside, the result would be nil because Mr. Linder's interest has been extinguished by his death.

Another factor which militates against complainant's insistence is that it is based upon an alleged fraud practiced upon unnamed creditors (not upon complainant), whereas no effort is made in this cause to bring the fruits of the suit to the benefit of the alleged victims; i. e., the creditors. Even though complainant should succeed herein, the first beneficiaries would of necessity be the defrauded creditors.

Finally, the evidence supports the conclusions of the Chancellor contrary to the second assignment. As pointed out above, there is evidence of value of the property up to complainant's estimate of $80,000.00. However, there is also evidence that the property was worth less than Mrs. Little paid for it. The Chancellor accepted as more credible the latter, more conservative, testimony; and this Court is not in a position to question his judgment in this regard.

Accordingly, the second assignment of error is respectfully overruled.

This record presents a very touching example of the successful career wife with an unfortunate, unsuccessful husband who

leaned heavily upon his successful sister. Mr. Linder was indeed pathetic in his efforts to preserve some semblance of order in the shambles of his financial affairs as he prepared to leave his home community to be with his wife in another state. He was pathetic in his final preparations for departure as he loaded his clothes and dog in his automobile, and then left the automobile with a friend while he returned a borrowed tractor implement. In this latter endeavor, he lost his life.

Mr. Linder doubtless hoped to recoup his finances and to induce his sister to sell the land back to him. This hope may have been realized had he lived, but he did not; and the hope was only a hope, not a legal, or even equitable, right which could be enforced after his death.

The nature of the case and its necessary disposition brings a note of sadness to this Court, as it doubtless did to the Chancellor. However, disputes within families or between strangers must be resolved under established rules of law, and then life must go on.

The decree of the Chancellor is affirmed. The costs of this appeal are adjudged against the complainant-appellant.

Affirmed.

SHRIVER and PURYEAR, JJ., concur.