CANNON et al. v. CHADWELL.—150 S. W. (2d) 710.

Middle Section. November 30, 1940.

Petition for Certiorari Denied by Supreme Court, May 3, 1941.

Trabue, Hume, Davis & Gale and Chas. C. Trabue, Jr., all of Nashville, for appellant Chadwell.

Guild & Guild, of Nashville, for appellees Cannon and others.

CROWNOVER, J.  This was a suit for rescission and cancellation of a contract of sale, for breach of the contract; or, in the alternative, for damages for breach of the contract.

Miss Sarah Cannon and Miss Mary D. Claypool purchased from Mrs. W. E. Chadwell a business called the "Woman's Exchange."  The Exchange operated a retail dry goods store, but did not own a stock of goods.  A number of women paid annual dues of $2 each to the Exchange for the privilege of sending articles (usually hand-made, such as clothing, candy, etc.) to be sold, the Exchange receiving a commission on each sale.

Miss Cannon and Miss Claypool purchased the fixtures, a list of about 900 members, and the good will of the Exchange for the consideration of $200 cash and a note for $300.

A written contract of sale was entered into between the parties, to which was attached Schedule A and Schedule B.  Schedule B was a list of the members, showing the merchandise belonging to each which was on hand and the amount of money due each by the Exchange.

In the written contract it was provided: "Party of the first part agrees to promptly pay the amounts due said Members as shown on Schedule B hereto attached."

In their original bill in this cause the complainants alleged that the defendant represented that said business was profitable and had the good will of its members, and that the accounts with said members, as set forth in the schedule attached to said contract, were correct, and that defendant would pay any unpaid accounts due said members. They further alleged that soon after they took possession of the business a number of members demanded the payment of their accounts not listed as unpaid in the schedule; that they reported the matter to the defendant; that she has failed and refused to pay such accounts, as the result of which they have lost the good will of said members and have been unable to conduct said business profitably. They charged that the contract of sale had thereby been breached and they asked for rescission or damages.

The defendant Mrs. Chadwell answered and alleged that the contract of sale contained no warranties; that she was willing to pay said debts, but had been unable to discover the amount of same.

Mrs. Chadwell further alleged that she was not the owner of the Exchange; that it was owned by Mrs. G. Pillow Williams; that Mrs. Williams had arranged with her to sign checks and contracts because Mrs. Williams was procuring a divorce and did not want to use her own name; that she signed her own name to this sale contract but was acting as agent for Mrs. Williams; and she filed a cross-bill and asked that the contract be reformed and that the words "Agent of Mrs. G. Pillow Williams" be inserted in place of "Mrs. W. E. Chadwell"; and that she have a decree for $300 and interest against the complainants.

The complainants answered the cross-bill denying that Mrs. Williams was the owner of the Exchange.

Depositions were taken of Miss Cannon, Miss Claypool, and Mrs. Chadwell.

Miss Cannon testified that soon after they took possession of the business a number of the members made claims that they had not been paid for merchandise that the Exchange had sold, and she filed a list of the members and the amounts claimed (more than 20). These names were not listed in the schedule as unpaid.

The defendant objected to this evidence on the ground that it was hearsay evidence, but the chancellor overruled the objection.

She further testified that she told Mrs. Chadwell of these claims, who the parties were, and that she wanted her to settle them; that she had the parties call Mrs. Chadwell; and that Mrs. Chadwell promised to pay them, but failed to do so; that the members became dissatisfied and quit dealing with them, and the business lost its good will; that they tendered the business back to Mrs. Chadwell and

requested cancellation of the note and return of the cash paid; that on failing to obtain any response they, after notice, sold the business for $120, which was the best price obtainable under said conditions.

Mrs. Chadwell testified that there was attached to the bill of sale, as Schedule B, a list of the members of the Exchange, which showed the amounts owed by the Exchange to the members, which had been prepared from the books of the Exchange; that the contract of sale provided that the seller should "pay the amounts due said members as shown on Schedule B"; and that she has paid all debts shown by Schedule B except one, amounting to $8.73.

She further testified that she had offered to credit the note given her by the complainants with the amount of any claims they could prove were not paid when the contract was signed.

Mrs. Chadwell testified that she was not the owner of the Exchange; that it was owned by Mrs. Pillow Williams, who sold it to the complainants; that she (Mrs. Chadwell) signed the contract of sale at Mrs. Williams' request because Mrs. Williams did not wish to use her own name as she was getting a divorce.

The chancellor found that the complainants purchased the Exchange from the defendant Mrs. Chadwell for the consideration of $200 cash and a note for $300, in which contract of sale said defendant conveyed her good will in said business and agreed to pay all existing indebtedness of said business; that said contract was breached by said defendant, in that there were a number of accounts owed by the defendant to certain members of the Exchange which are still unpaid, and defendant's failure and refusal to pay the same after due demands resulted in dissatisfaction among the members of said Women's Exchange so as to materially injure said business; that upon the complainants' discovery of the defendant's said breach of said contract they made seasonably demand upon the defendant for rescission of said contract by restoration of said $200 cash consideration and the return and cancellation of the said $300 note, which demand was refused by the defendant, and thereupon complainants endeavored to dispose of said business to the best advantage, upon due notice, to the defendant, and sold it for $120 which was the best price obtainable under the aforesaid condition and circumstances; and that accordingly complainants were entitled to a rescission of said purchase. And he decreed that said defendant restore the consideration of $200 cash less the sale price of $120, making the net recovery of cash $80, and surrender the $300 note which was declared cancelled. The defendant's cross-bill was dismissed.

The defendant Mrs. Chadwell excepted to said decree and appealed to this court, and has assigned errors, which are, in substance, as follows:

(1) The chancellor erred in finding and decreeing that the defendant had breached the contract of sale.

(2)  The chancellor erred in finding and decreeing that there were accounts owed by the defendant to certain members of the Exchange which are unpaid.

(3)  The chancellor erred in overruling the defendant's objections to Miss Cannon's testimony that various members of the Exchange had filed claims with her for unpaid accounts.

(4)  The chancellor erred in dismissing the cross-bill and in not rendering a decree on the $300 note in favor of cross-complainant.

■  The questions involved are whether the Exchange owed some of its members, as testified by Miss Cannon, and whether Miss Cannon's testimony was admissible to show that such claims were made and there were such debts, as the result of which the business lost its good will.

Miss Cannon was not undertaking to establish the amounts of these debts.  Her testimony was that a number of members of the Exchange had complained that their accounts were not paid, and the failure of Mrs. Chadwell to pay them had injured the business, and such failure was a breach of the contract.

The claims filed by Miss Cannon as debts of the Exchange were not denied by Mrs. Chadwell.  She does not say that they were not due, owing and unpaid, and she does not deny that she promised to pay them or that the purchasers lost the good will of the business on account of nonpayment.

Miss Cannon's testimony was that there were complaints by the members, and that they quit transacting business with the Exchange and gave that as the reason.  She was not seeking to prove the amounts of the indebtedness.

This testimony was admissible.

■  "Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply, but the statement may be shown.  Evidence as to the making of such statement is not secondary but primary, for the statement itself may constitute a fact in issue, or be circumstantially relevant as to the existence of such a fact.  Such statements are not regarded as evidence of the facts asserted by the declarant."  22 C. J., 259, 260, sec. 262.

Mrs. Chadwell did not deny that these accounts were due and unpaid.  Her testimony was that she had paid the accounts listed in Schedule B.

■  But regardless of this proposition, Miss Cannon's testimony as to the complaints, the number of debts and the amounts and their nonpayment, as the result of which the business was destroyed, is admissible for the reason that Miss Cannon told Mrs. Chadwell all about these matters and she agreed to pay them.  This is testimony about existing facts, and it was unnecessary to introduce each of the parties to show the indebtedness as Mrs. Chadwell had already ad-

mitted them. As above stated, Mrs. Chadwell does not deny these statements.

These facts having been proved and not denied, they are sufficient for rescission of the contract. A misrepresentation as to a substantial amount of indebtedness, more than represented, is a ground for rescission of the contract. True v. Deeds & Sons, 151 Tenn., 630, 271 S. W., 41; 17 C. J. S., Contracts, 906, sec. 422; Shwab v. Walters, 147 Tenn., 638, 251 S. W., 42.

"As a general statement of the law upon this subject, a buyer may be discharged if there is a breach of the contract by the seller in some substantial particular which goes to its essence and renders the defaulting party incapable of performance or makes it impossible for the defaulting party to carry it out as intended. 35 Cyc. 135." German-American Monogram Mfgrs. v. Johnson, 133 Tenn., 571, 574, 182 S. W., 595, 596.

An innocent material misrepresentation is a ground for rescission. 2 Restatement of the Law of Contracts 909, sec. 476b.

Where the seller refuses to accept return of the property the buyer may and should, at the seller's expense, resell the property for the seller's account, at the best price obtainable, and account and give credit for the proceeds, after giving prior notice to the seller of the contemplated resale for his account. 55 C. J., 297, sec. 282; Code, sec. 7262; Hardwick v. Can Co., 113 Tenn., 657, 88 S. W., 797.

Hence, all the assignments of errors are overruled and the decree of the chancellor as to the amount of the judgment and the rescission of the contract and cancellation of the note is affirmed. A decree will be entered in this court in favor of Miss Cannon and Miss Claypool against Mrs. Chadwell and the surety on her appeal bond for $80 and interest on same from April 12, 1940, to the present, together with the costs of the cause including the costs of the appeal, and also for the rescission of the contract and a cancellation of the note for $300 as decreed by the chancellor.

Faw, P. J., and Felts, J., concur.