Suresh P. **VAKIL** and wife, Sudha S. Vakil, Plaintiffs-Appellants,

v.

Rajengra G. **IDNANI** and wife, Hoor R. Idnani, Defendants-Appellees.

Court of Appeals of Tennessee, Western Section.

Nov. 5, 1987.

Application for Permission to Appeal Denied by Supreme Court March 7, 1988.

W. Keith McCord, Knoxville, for plaintiffs-appellants.

John R. Morgan, Chattanooga, for defendants-appellees.

CRAWFORD, Judge.

Plaintiffs, Suresh P. Vakil, and wife Sudha S. Vakil, buyers under a real estate sales contract sued sellers, Rajengra G. Idnani and wife, Hoor R. Idnani, for a rescission of the contract, and the deed and security instruments executed in closing the transaction. At the conclusion of the nonjury trial, the trial court entered an order denying rescission, but ordering a reformation of the warranty deed from the seller to the buyer. The buyers have appealed and present three issues for review which we quote from their brief:

1. In an action for rescission, were plaintiffs/appellants entitled to rescission as a result of mutual mistake without being required to prove fraud, either actual or constructive?

2. Where the plaintiffs/appellants have elected the remedy of rescission, may the trial court deny such election of remedies and grant the relief sought by defendants/appellees?

3. Alternatively, if a showing of fraud is required in a rescission action, did the trial court err in failing to hold that fraud was established under the facts of this case?

Plaintiff, Suresh P. Vakil, and defendant, Rajengra G. Idnani, were the only witnesses to testify and the trial court correctly noted that "there's very little difference in the testimony in this case." We will briefly set out the pertinent facts as established by the proof.

The buyers and sellers reached an agreement for buyers to purchase sellers' motel in Cleveland, Tennessee, and together they prepared and executed a document setting out their agreement, which we quote:

### REAL ESTATE SALES CONTRACT FOR FRIENDLY INN MOTEL

Buyers: Suresh P. Vakil & Sudha S. Vakil

Sellers: Rajendra G. Idnani and Hoor P. Idnani

Buyers and sellers hereby enter into an agreement for sale of the Friendly Inn

Motel under the conditions setforth inhere.

1) Sellers agree to sell and buyers agree to buy the Friendly Inn Motel located at 1211 South Lee hwy, Cleveland, Tn 37311.

2) Purchase price will be $450,000.00. Downpayment at closing will be $40,000.00 less the earnest money of $5,000.00. $10,000.00 will be payable to sellers 30 days from closing with the interest rate of 15% per annum and $25,000.00 at 6 months from closing with interest rate of 15% per annum. Additional $25,000.00 will be payable to sellers at 18 months from closing with interest rate of 10% per annum. Remainder of $350,000.00 will be financed by the sellers and will be amortized over 15 years at 10% fixed rate of interest per annum. The $350,000.00 morgage (sic) will be assumable wraparound morgage (sic) and seller will wrap the existing morgages (sic) on the property. There will be no prepayment penalty on any of the morgages (sic) and any delinquent payments will bear a 5% late charge after 15 days.

3) Buyers are submitting the earnest money of $5,000.00.

4) Included also in the price is approximately 3 acres of land, buildings, appliances, TV's, fixtures and other business related equipment. The owner's personal belongings at the manager's quarters are not included in the price.

5) Buyers promise to assume the existing lease for 24 19" color TVs and the payments for Mitel SX–2A phone system (appx $250.00 per month and final payment of appx $5,000.00 in December 1988.

6) Buyer will assume the payment of yellow pages advertising in the amount of $79 Per month until July 1986 and in the amount of $7.50 Per month thereafter.

7) Sellers have made the Buyers aware of potential street through the property and will not be responsible of the outcome.

8) Taxes will be prorated to the date of closing.

9) Monthly dues will be prorated to the date of closing.

10) Closing costs will be customary and buyers will purchase at their own expence (sic) any title opinion or title policy.

11) Sellers will provide the buyers with a general warantee (sic) deed.

12) Closing will be at a time mutually convenient to both parties but no later than April 30, 1986.

13) Seller will show the buyers the past sales tax receipts to prove the gross business and also expences (sic) in their books.

14) Sellers will also advertise 'Friendly Inn' name on the 2 billboards on I–75 for half the cost on which they presently advertise Cleveland Motel.

15) Buyers are free to make any kind of remodeling, renovation or other changes to enhance the business and they promise to keep the buildings and other business related property in good repair.

16) Sellers promise to train and assist the buyers for a period of 2 weeks following the closing at no cost.

17) Buyers and sellers will prepare the list of inventory together.

18) In the event of an unmarketable title the buyer will receive the full earnest money refund. In the event of default by the buyers the earnest money will be the liquidated damages compensation for the sellers.

19) Buyers will not be responsible for any debts and obligations of the sellers before closing.

20) This agreement is the complete understanding of the buyers and sellers and any changes to the agreement should be in writing and initialed by both parties.

21) This agreement will survive the closing.

| Vakil S.P. /s/ | 4/7/86 |
|---|---|
| Buyer | Date |
| Rajendra G. Idnani /s/ | 4/7/86 |
| Seller | Date |

The parties agree that the sales contract correctly sets out their agreement. The problem arises with the documents executed to close the transaction. The record indicates that an attorney representing the seller prepared the closing documents and that the buyer was represented by an attorney at the closing. Although neither plaintiff nor defendant really understood the legal ramifications of the language in the instruments, they signed the documents in reliance on the attorneys' assurance that the documents complied with the requirements of the contract.

After the April 18, 1986 closing, the buyers took possession of the property and operated the motel. Several months later, the buyers became aware of some discrepancies in the deed and security instruments executed at the closing which, in effect, obligate the buyers for a total purchase price of over $600,000 instead of the $450,-000 sale price agreed upon in the contract. After obtaining counsel, the buyers sought to rescind the contract and return the property to the sellers, but sellers rejected the proposal. The buyers then filed the complaint in this case seeking a rescission of the transaction on the grounds of mutual mistake and/or fraud. Payments on the purchase money notes during the pendency of the suit have been paid to the Clerk and Master.

Buyers assert and the proof shows that the warranty deed from the sellers to the buyers provides for buyers to assume the indebtedness secured by three trust deeds on the property. The total of the principal balances of the three obligations was approximately $200,000, and plaintiffs contend that the deed providing for assumption of the indebtedness, together with the language of the trust deeds securing the purchase money notes, obligates them to pay approximately $650,000 for the property instead of $450,000, as the contract provides. The trial court found that the warranty deed providing for assumption was not in conformance with the contract and placed additional obligations on buyers contrary to the contract. The trial court found that there was no fraud proved, and that the deed should be reformed to eliminate provisions for the assumption of existing indebtedness.

We concur in the finding by the trial court that there was no fraud proved in this transaction. It is clear from the proof that the parties agreed on a total sale price of $450,000 for the motel, that by mistake the deed and security instruments imposed an additional obligation on the buyer. The sellers readily concede that it was the intent of the parties that the buyers be obligated for no more than that.

Although plaintiffs have set forth three issues for review, we perceive the real issue for review to be whether the trial court erred in denying rescission and ordering reformation.

Plaintiffs assert in their brief:

The Trial Court clearly found, based upon the undisputed evidence, that mutual mistakes of material matters did exist. However, the Trial Court refused to grant rescission because, "... The Court is of the opinion that rescission is not warranted, there having been no showing of fraud, either actual or constructive, but that reformation of the documents is the appropriate remedy." The Trial Court erred as a matter of law in requiring a finding of fraud as a prerequisite to granting rescission.

■ We concur in the trial court's finding that there was a mistake in the closing documents, and we concur in the trial court's findings that there was no proof of fraud. We believe the plaintiffs have misinterpreted the trial court's order. We do not read it as requiring a finding of fraud in order to warrant rescission. The law in this state is clear that rescission may be granted on the ground of mutual innocent mistake. *Robinson v. Brooks*, 577 S.W.2d 207 (Tenn.App.1978); *Wilson v. Mid-State Homes, Inc.*, 53 Tenn.App. 520, 384 S.W.2d 459 (1964).

■ The equitable remedy of rescission is not enforceable as a matter of right but is a matter resting in the sound discretion of the trial court and the court should exercise the discretion sparingly. *Early v. Street*, 192 Tenn. 463, 241 S.W.2d 531

(1951); *McMillan v. American Suburban Corp.*, 136 Tenn. 53, 188 S.W. 615 (1916). Thus, the real question in the case before us is whether, under the proof, the trial court abused its discretion in failing to grant rescission. We think not.

The proof is clear that the parties made an agreement for the purchase and sale of the motel for a total of $450,000. By mistake, the instruments securing the deferred payments and the form of the warranty deed obligated the buyers to pay more than the agreed purchase price. The mistake obligated the buyers for something to take place in the future, and they have not actually incurred any additional out of pocket loss. The buyers have made no change of position based upon the mistake and a proper reformation of the closing instruments can carry into effect the agreement which the parties had at the time the sales contract was executed. The reformation of the instruments will accomplish what was intended by the parties without putting either party at an unfair advantage. *See Blazer Financial Services, Inc. v. Diddle,* 648 S.W.2d 257, 259 (Tenn.App. 1983). Under the circumstances, the trial court properly exercised his discretion to deny rescission and reform the instruments.

We do agree with plaintiff's assertion that the trial court's order for reformation does not adequately reform the instruments to comply with the sale contract. The trial court ordered that the warranty deed be reformed to eliminate the provisions for assumption of the indebtedness secured by the existing trust deeds, and this was a correct reformation. However, in addition thereto, the trust deeds executed by the buyers must be reformed to eliminate certain language therein. The trust deed securing the notes totaling $60,-000 must be reformed to eliminate the "due on sale" clause. Both trust deeds must be reformed to eliminate all provisions providing that any amounts paid by the holder on the prior trust deeds would be additional indebtedness secured by the trust deed. It appears that the draftsman was using language normally used in a second trust

deed, where any additional payments to protect the security would not be included in the original indebtedness secured by that second trust deed. In the case before us, the total obligation of the buyers is $350,-000 and included in that $350,000 are the amounts due under the prior trust deeds. Therefore, should the seller, Idnani, be required to make any payments on the prior trust deeds in order to protect his security, the amounts so paid should not be added to the indebtedness secured by this trust deed because the buyers are already obligated to pay that indebtedness. Therefore, the purchase money trust deed should be reformed to eliminate the following language:

> Grantor covenants and agrees that, to the extent secured party pays out of secured party's own money and not money we have paid to secured party for the purpose of paying prior encumbrances any installment of principal or interest or any other sums due under the prior deeds of trust, then secured party shall have a lien on the encumbered premises hereunder but equal in rank and priority to the prior deeds of trust and, in addition, to the extent necessary to make effective such rank and priority: (i) secured party shall become subrogated to, receive and enjoy all of the rights, liens, powers and privileges granted in the prior deeds of trust, and (ii) the prior deeds of trust and this deed of trust shall remain in existence for the benefit of and to further secure the debt and other sums secured, or that hereafter become secured, hereunder.

> In case of default hereunder, on any one or all or the notes secured by this deed of trust, or any or all of the prior notes or trust deeds, then in addition to any other rights and remedies available to secured party, secured party may, but need not, make any payment or perform any act herein required of grantor in any form and manner deemed expedient, and may, but need not, make full or partial payments of principal or interest on the prior deeds of trust, other prior encumbrances, if any, and purchase, discharge, compromise or settle the prior deeds of trust, any tax lien or other prior lien or title or

claim therefore, or redeem from any tax sale or forfeiture affecting said premises or contest any tax or assessment. All monies paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including attorneys' fees, and any other money advanced by secured party to protect the mortgaged premises and the lien hereof, shall be so much additional indebtedness secured hereby, and shall become immediately due and payable with interest thereon at the rate of 10 percent (10%) per annum. Inaction of secured party shall never be considered as a waiver of any right accruing to it on account of any default on the part of grantor.

As modified, we affirm the order of the trial court and remand this case to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed equally against the parties.

HIGHERS and FARMER, JJ., concur.