# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 1, 1999

## DON STONECIPHER v. ESTATE OF M.E. GRAY, JR., ET AL.

**Appeal from the Chancery Court for Maury County**
**No. 97-206    Robert L. Jones, Judge**

---

**No. M1998-00980-COA-R3-CV - Filed May 4, 2001**

---

This is an appeal from a chancery court jury trial on a dispute arising from a contract to buy a wrecker and salvage yard business for 1.1 million dollars. The purchaser alleged that the seller fraudulently induced him to contract to buy the business because after the parties reached an agreement on the purchase, the seller took items contemplated to be included in the contract without the buyer's knowledge. On the other hand, the seller's estate asserted a breach of contract claim because the note's balloon payment was overdue. After a trial, the jury decided that the seller had concealed or withheld items that the parties contemplated to be part of the contract, that the seller made misrepresentations as to what was to be included in the contract, he knew the misrepresentations were false at the time made, and he intended the buyer to rely on the misrepresentations. The jury decided that, had the buyer known the items were missing, he would not have declined to enter into the purchase at all but, instead, would have negotiated a lower price. Therefore, the court entered a verdict dismissing the buyer's complaint for rescission, awarded him a set-off and entered judgment against him for the balance of the note plus interest minus the set-off. Costs were apportioned between the parties and each party was ordered to pay its own attorney's fees. Both parties appeal. For the reasons below, we affirm the judgment of the trial court in part, vacate in part, and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part, Vacated in Part, and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

John Colley, III, Columbia, Tennessee, for the appellant, Don Stonecipher.

Gary M. Howell, Columbia, Tennessee, for the appellees, Estate of M.E. Gray, Jr. and Lillian Adele Gray.

# OPINION

This case involves a contract under which the appellant, Mr. Stonecipher, was to buy from the appellee, Mr. Gray, two ongoing and operating wrecker businesses and a salvage yard.[1]

In February 1996, Mr. Stonecipher began negotiating with Mr. Gray to buy Gray's Wrecker Service and Salvage and Logue's Wrecker Service. The parties drove around the property on several occasions and discussed which items were to remain with the businesses and what Mr. Gray would keep. At no time was a formal inventory list of the larger items presented by Mr. Gray nor made by Mr. Stonecipher. Also, there is no evidence that at any time was there a discussion as to what the outstanding accounts receivable were, and Mr. Stonecipher admits that he did not examine the books with any detail.

Despite all of this, the parties agreed on the deal, which was that the sale was to include a fifteen-acre piece of real property with a building and all of the equipment and inventory, except those items specifically included on a schedule in the agreement, and the accounts receivable associated with the businesses in consideration of 1.1 million dollars to be paid as follows: $200,000 at the time of signing the contract, then 12 monthly payments of just over $5,500 with a balloon payment of $891,697.05 to be paid in March 1997. While the attorney was drafting the contract, Mr. Stonecipher moved onto the premises in early March and began operating the business. Mr. Gray and his staff remained for a short time to "get his book work" straightened out and handle matters related to his going out of business. They worked in a back office and did not leave until the contract was signed, the money exchanged and the deal finalized.

The contract provisions relevant to this appeal include:

1.2 PERSONAL PROPERTY All equipment, furniture, fixtures, signs, vehicles, inventory and other articles of personal property owned by Seller and used in connection with the real property and with Seller's businesses known as Gray's Wrecker Service and Salvage and Logue's Wrecker Service, unless specifically excluded from this transaction by inclusion on the list set forth as Exhibit C hereto.

***

4.1 POSSESSION Upon the execution of this agreement and Buyer's payment to Seller of the Two Hundred Thousand Dollars ($200,000.00) mentioned above, Buyer may take possession of the properties and operate the businesses outlined above. Buyer will be entitled to all incomes from said properties and businesses from that date forward, including all accounts receivable. Seller agrees to indemnify and hold

---

[1] Mr. Gray died after this lawsuit was instituted, and the suit was continued against his estate through his wife, Lillian Adele Gray, as Executrix. She was also added as an individual defendant because she was listed as an individual on the note signed by Mr. Stonecipher.

Buyer harmless from any liability arising from Buyer's occupancy of the property or operation of the businesses, except for those matters set forth in paragraph 7.2 [Environmental indemnification] below.

5.1 INSPECTION Buyer has had ample opportunity to inspect the properties and the records of the businesses and accepts them in their current condition.

The contract was eventually signed by the parties and money exchanged on or about March 20, 1996. However, it is not disputed that Mr. Stonecipher moved into the premises in early March, about 2 weeks prior to the signing of the contract. Mr. Gray dropped the business license on March 5, 1996 and Mr. Stonecipher had it reinstated in his name within a few days thereafter. The parties appear to agree that Mr. Stonecipher "took possession" prior to the formal signing of the agreement.

Mr. Stonecipher continued to run the businesses and made the eleven monthly payments. He did not make the final balloon payment due in March 1997 and, instead, filed this lawsuit seeking to rescind the contract or be relieved from further performance. At the time of trial, the balloon payment was still unpaid. The business increased in revenues and value during the period Mr. Stonecipher was running it.

The problems developed when Mr. Stonecipher learned that Mr. Gray had had various items removed from the salvage yard or failed to turn over to Mr. Stonecipher some items previously stored elsewhere. According to the testimony of one witness, Mr. Gray had approximately 15 to 20 vehicles, some vehicle parts, and some equipment removed from the salvage yard premises. The items were moved to various pieces of property owned by Mr. Gray, his family or friends. After Mr. Gray became ill and a conservator was appointed for him, the conservator had some items returned to Mr. Stonecipher. It is not entirely clear whether Mr. Stonecipher first found out about the missing items from the conservator or other people, but Mr. Stonecipher himself testified that Mr. Gray removed a truck and two generators shortly after Mr. Stonecipher took over the business. The items removed or kept by Mr. Gray included cars, parts, transmissions, motors, and equipment. In November of 1996, Mr. Stonecipher also discovered from Mr. Gray's bookkeeper that Mr. Gray had removed some of the accounts receivable from the business's accounts and had billed them out to his separate office prior to the signing of the contract. The bookkeeper testified that Mr. Gray collected approximately $18,000 from these accounts receivable after Mr. Stonecipher took over the business in early March. However, the bookkeeper was unable to show proof in the accounting ledgers or back records of some of the deposits she claimed to have made from these accounts receivable.

By the start of the trial herein, Mr. Stonecipher had voluntary nonsuited all claims except those based on breach of contract and misrepresentation and fraud. Mr. Gray cross-claimed for breach of contract. Essentially, Mr. Stonecipher wanted rescission of the contract for the purchase of the businesses, along with payment to him for any increase in the value of the businesses. He based his request for rescission on the argument that he had been fraudulently induced to enter into the contract due to Mr. Gray's misrepresentations regarding what assets were to be transferred.

Alternatively, he sought to be relieved from further performance of the agreement, which at that point was payment of the balloon payment representing approximately 80% of the purchase price, because of Mr. Gray's breach of contract by failing to transfer all assets that were to be included in the purchase price. Mr. Gray sought judgment for the amount due under the note for purchase for the business.

These issues were tried before a jury. At the close of the evidence, the trial court and counsel for both parties engaged in discussions regarding the appropriate jury instructions. In spite of the trial court's misgivings about whether this was properly a case for the remedy of rescission, Mr. Stonecipher's counsel insisted it was. The parties and the court agreed that it was properly the province of the court to determine whether the remedy of rescission should be granted and that the jury would consider the factual issues relevant to that decision. They also agreed that the case of *Atkins v. Kirkpatrick*, 823 S.W.2d 547 (Tenn. Ct. App. 1991), was the appropriate authority on the elements necessary to a claim for rescission. They did not reach total agreement, however, on how the special interrogatories should be drafted.

The jury was instructed and given the special verdict form, which was returned completed as follows:

1. Do you find that M.E. Gray, Jr., withheld or concealed certain accounts receivable, vehicles, or other assets that were intended by both parties to be included in the contract?
Yes __X__      No _____

2. Do you find that any such withholding or concealing constituted a misrepresentation of an existing fact material to this contract and that M.E. Gray, Jr., knew the representation was false when made?
Yes __X__      No _____

3. Do you find that Don Stonecipher relied upon the alleged false representation and the [sic] M.E. Gray Jr., intended that Don Stonecipher rely upon the truth of such representation?
Yes __X__      No _____

4. Do you find:

(1) that the alleged false representation about inclusion of those allegedly withheld or concealed accounts receivable, vehicles, or other assets were so material and important to the transaction that Don Stonecipher would not have contracted to buy this business without those assets being included;
or instead,

(2) that Don Stonecipher would have negotiated the value of those assets setoff against the purchase price?  (The plaintiff has the burden of proving No. (1) by a preponderance of the evidence; otherwise No. (2) would be presumed.)

The jury finds: _____ (1) that Don Stonecipher would not have contracted;
or
  X   (2) that Don Stonecipher would have negotiated a setoff in the price.

5.  If you find No. (2) above, what amount of damages should be setoff against the balance of the purchase price represented by the note on which Mrs. Gray filed her counterclaim?

Damage amount for setoff:       $178,000.00

The court then entered judgment dismissing Mr. Stonecipher's complaint and entering a judgment for Mr. Gray in the amount of the note plus interest, minus the set-off of $178,000.  The parties were ordered to pay their own attorney's fees, and costs were assessed one-third to Mr. Stonecipher and two-thirds to Mr. Gray.  Mr. Stonecipher appealed, and Mr. Gray's estate and Mrs. Gray also raised issues on appeal.

I.

We begin with Mr. Stonecipher's argument that the trial court should have granted rescission of the contract based upon the jury's determination that Mr. Gray knowingly made misrepresentations of fact, by withholding or concealing certain assets intended to be included in the sale, intending that Mr. Stonecipher rely on those misrepresentations, and that Mr. Stonecipher did so rely.

With regard to the jury's findings of fact, we are limited to determining whether there is material evidence to support the verdict, taking the strongest legitimate view of all the evidence in favor of the verdict. *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); Tenn. R. App. P. 13(d).  Even if we assume there is material evidence to support the jury's findings, however, the real issue is whether, given those factual findings, the trial court properly denied the remedy of rescinding the contract.  Our review of the conclusions of law by the trial judge is a question of law reviewed *de novo* with no presumption of correctness. *Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).

Rescission[2] is an equitable remedy, it is not enforceable as of right, and the decision of whether to grant this extraordinary remedy rests in the sound discretion of the trial court. *True v. Deeds & Son*, 151 Tenn. 630, 634, 271 S.W. 41 (1924); *Vakil v. Idnani*, 748 S.W.2d 196, 199-200 (Tenn. Ct. App. 1987); *Bowman v. Seymour*, No. 03A01-9904-CH-00158, 1999 WL 1068691 at *2 (Tenn. Ct. App. Nov. 24, 1999) (no Tenn. R. App. P. 11 application filed). While a plaintiff must prove the elements of one of the grounds justifying rescission in order to be eligible for that remedy, such proof does not require the trial court to automatically grant it. *Id.*

> The equitable remedy of rescission is not enforceable as a matter of right but is a matter resting in the sound discretion of the trial court and the court should exercise the discretion sparingly. . . . Thus, the real question in the case before us is whether, under the proof, the trial court abused its discretion in failing to grant rescission.

*Vakil*, 748 S.W.2d at 200.

As the *Vakil* court noted, because the decision of whether to grant rescission is discretionary, a determination of whether rescission is an appropriate remedy depends largely upon the facts of the case. *See also Deeds & Son*, 151 Tenn. at 634 (in granting or refusing requested relief of rescission, a court acts on its own notions of what is reasonable and just under all the surrounding circumstances). In *Vakil*, the court determined that, although the plaintiffs had established mutual mistake which constituted a ground for rescission, reformation of the agreement, rather than its rescission, was appropriate because the reformation "will accomplish what was intended by the parties without putting either party at an unfair advantage." 748 S.W.2d at 200. Thus, this court affirmed the trial court's exercise of its discretion in denying rescission and ordering reformation of the agreements.

Rescission can be an appropriate remedy for a fraudulent misrepresentation surrounding the formation of a contract, but the representation

> (1) must have been a representation as to an existing fact; (2) must have been false; (3) must have been relied upon; and (4) must have been so material that it determined the conduct of the parties seeking relief.

*Atkins v. Kirkpatrick*, 823 S.W.2d at 552 (citing *Dozier v. Hawthorne Dev. Co.*, 262 S.W.2d 705, 709-10 (Tenn. Ct. App. 1953)).

The final requirement, that the misrepresentation was so material that it determined the conduct of the party, is another way of saying that the fraud or misrepresentation must have induced

---

[2] "A 'rescission' amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination, . . . It is the annulling, abrogation of the contract and the placing of the parties to it in status quo." 22 TENN. JURIS., *Rescission, Cancellation and Reformation* § 1 at 34 (1999) (quoting BLACK'S LAW DICTIONARY 1306 (6th ed. 1990)).

the party to enter into the contract. The representation must go to a "basic assumption on which that party is making a contract." *Silva v. Crossman*, No. 95-2607 II, 1996 WL 631492 at *2 (Tenn. Ct. App. Nov. 1, 1996) (no Tenn. R. App. P. 11 application filed). In other words, the representation cannot be relied on as the basis for rescission, unless the representation "afforded a material inducement to the formation of such contract." *Cooley v. East & West Ins. Co.*, 61 S.W.2d 656, 659 (Tenn. 1933); *see also*, *U.S. for the use and benefit of Pickard v. Southerland Constr. Co.*, 293 F.2d 493 (6th Cir. 1961), rev'd in part on other grounds, 371 U.S. 57 (1962). Rescission may be appropriate where the defect goes to the essence of the contract or makes it impossible for the contract to be carried out as intended. *Cannon v. Chadwell*, 25 Tenn. App. 42, 47, 150 S.W.2d 710, 712 (1940).

Two other principles of the law regarding rescission are relevant here. First, the purpose of rescission is to return the parties to the position they would have been in had the contract not existed. If the parties cannot be returned to *status quo*, or, if due to the passage of time or other changed circumstances, equity cannot be done, rescission is not appropriate. *Lindsey-Davis Co. v. Siskin*, 210 Tenn. 339, 342-43, 358 S.W.2d 331 (1962); *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993). Second, where an adequate remedy at law, such as an award of damages, exists, rescission is not an appropriate remedy. *Chastain v. Billings*, 570 S.W.2d 866, 868 (Tenn. Ct. App. 1987) (finding, however, damages or repair of the house were not adequate under the facts).

Particularly persuasive to us is the reasoning applied to a purchaser's request for rescission of a completed sale of an ongoing business in *Taylor v. Rainey*, No. 86-5-II, 1986 WL 5546 (Tenn. Ct. App. May 14, 1986) (no Tenn. R. App. P. 11 application filed). In *Taylor*, the plaintiff complained that defendants failed to deliver certain equipment and realty intended to be included in the sale of a funeral home and that the misrepresentations induced plaintiff to enter the contract of sale. *Id.* at *4. This court stated in pertinent part:

> From this record it appears that plaintiffs' real complaint is not that they were fraudulently induced to enter into the contract of sale by any false representation but that the defendant did not fully perform the contract of sale by conveying and delivering to plaintiffs all that the contract required to be conveyed and delivered.

*Id.* at *7. The court reasoned that the acts of defendant to evade performing the obligations of the contract, by attempting to remove the equipment and convey other portions of the real property, did not mislead or induce the plaintiffs to enter the contract to buy a funeral home, what they bargained for from the start. *Id.*[3]

_____

[3] However, we note that in *Taylor* this court found that no fraudulent misrepresentation of existing material fact had been made to induce the sale, distinguishing that opinion from this case. Nonetheless, we believe the principle teaching of the case is that a failure to transfer agreed upon assets pursuant to contract does not justify rescission of that contract absent proof those assets were a material part of the buyer's decision to purchase, especially where the buyer received what was the essence of the contract.

The jury herein determined that Mr. Gray withheld or concealed certain assets the parties intended to be included in the contract, that this constituted a misrepresentation of a material fact, and that Mr. Gray intended Mr. Stonecipher to rely on the misrepresentation. Mr. Stonecipher argues that these findings automatically entitle him to rescission. We respectfully disagree with this assertion because (1) the jury did not find in his favor regarding the inducement element and (2) even if he successfully proved all elements, the remedy of rescission is not as a matter of right, but is within the court's discretion, and should be applied sparingly and only where equity requires it. *James Cable Partners v. City of Jamestown*, 818 S.W.2d 338, 343 (Tenn. Ct. App. 1991).

Implicit in the jury's verdict is a finding that the misrepresentation did not go to the essence or heart of the contract, and did not affect Mr. Stonecipher's behavior, that is, his decision to make the purchase. The evidence supports the conclusion that the statements made by Mr. Gray, as to what was included with the business did not induce Mr. Stonecipher to enter the contract. There is no evidence in the record that Mr. Stonecipher was ever given any figure as to what the outstanding accounts receivable were, nor was he given any list of the inventory of the salvage yard. In fact, Mr. Stonecipher testified he did not know the amount of accounts receivable he was going to get, nor did he know the extent of the inventory of the salvage yard. He never took additional steps to verify these assets prior to signing the agreement or taking over the business. Further, in the time he operated the business, he did not discover that these assets that should have been included in the sale were not, in fact, transferred to him. He learned this information only from other persons. The testimony indicates that approximately fifteen to twenty vehicles, a pickup truck which Mr. Stonecipher valued at $2500, and two generators valued at $800 were removed. Mr. Stonecipher never noticed their absence in view of the number of other such items left in the salvage yard. Thus, they were not, apparently, items which made operating the business impossible or even difficult.

Therefore, we conclude that there was evidence to support the jury's conclusion that the misrepresentation was not so material that Mr. Stonecipher would not have purchased the businesses had he known of the missing assets. In fact, although he testified that he would not have entered into the contract if he had known how Mr. Gray would subsequently deal with him, Mr. Stonecipher also stated he attempted to work out an agreement under which he would keep the businesses but for a lower cost.

We further conclude that the trial court properly denied rescission because, in view of the facts of this case, rescission would not have been appropriate. Mr. Stonecipher had been operating the businesses for over a year; they had increased in value during that time. Operation of a salvage yard necessarily involves selling vehicles and parts, so the inventory is constantly changing. There was no inventory of the assets when Mr. Stonecipher took over the businesses, so it would be impossible to return the business to its pre-sale condition. In *Lamons v. Chamberlain*, 909 S.W.2d at 800-01, this court determined that rescission of a contract for purchase of an ongoing business was not appropriate because making a return to the *status quo* was impossible since the purchaser had operated, received revenues from and reinvested funds into the business since the purchase.

Further, Mr. Stonecipher clearly received what he intended to purchase, an ongoing wrecker and salvage business, which he was able to operate successfully. Allowing him to rescind the contract right before eighty percent of the purchase price was due, on the basis he did not receive some assets that were included in the contract, when the absence of those assets did not interfere with his ability to operate the business successfully, would not achieve equitable goals.

> Rescission of a contract is not looked upon lightly. It is available only under the most demanding circumstances and depends on the individual facts and circumstances of each case.

*Lamons*, 909 S.W.2d at 801. Rescission will be permitted only for those breaches that are so substantial and fundamental as to defeat the object of the parties in making the agreement. *Loveday v. Cate*, 854 S.W.2d 877, 879 (Tenn. Ct. App. 1992).

Finally, we agree with the *Taylor* court in that we believe that Mr. Stonecipher's complaint is really more akin to a breach of contract case for failure to deliver goods described in the contract, rather than misrepresentation which was inducement to enter the contract. The order dismissing Mr. Stonecipher's rescission claim is hereby affirmed.

II.

Next, Mr. Stonecipher argues that the fraudulent misrepresentations excused any further performance by him under the contract and he should be allowed to terminate the contract.[4] He argues that fraud is always a viable defense to a claim to compel payment under a breach of contract claim and that the fraud excuses further performance. In this case, the only performance still due was Mr. Stonecipher's payment of the remaining eighty percent of the purchase price.

The remedy Mr. Stonecipher seeks is not different in practical effect from the rescission remedy he requested. The factors justifying excuse from performance are essentially the same as those justifying rescission.

> Generally, such nonperfomance [as will suspend or discharge the other party's duty to perform] will attain this level of materiality only when it goes to the root, heart, or essence of the contract or is of such a nature as to defeat the object of the parties in making the contract, or, as has sometimes been said, when the covenant not

---

[4]In addition, Mr. Stonecipher takes issue with the fact that although the jury was properly instructed on fraud as a defense to excuse further performance of the contract as to the cross-claim, this issue was not addressed on the verdict form. Thus, the jury did not determine whether Mr. Gray's fraud excused Mr. Stonecipher's further performance. When presented with that objection after the jury returned its verdict, the trial court had two responses: (1) that in this case, the issue of whether or not to excuse further performance was a question of law which the court would determine, and (2) in any event, the jury answered the question by determining a set-off, thereby only excusing performance as to the amount of the set-off. We agree that was the effect of the jury's verdict.

performed is of such importance that the contract would not have been made without it.

14 WILLISTON ON CONTRACTS § 43:6 at 579-80 (2000).

In Tennessee, in order for a buyer to be discharged from obligations under a contract, the misrepresentation by the seller must be of "some substantial particular which goes to its [the contract's] essence and renders the defaulting party incapable of performance or makes it impossible for the defaulting party to carry it out as intended." *Cannon v. Chadwell*, 150 S.W.2d at 712-13 (citations omitted) (contract rescinded where unpaid accounts, represented by seller to have been paid, diminished the goodwill of the business and forced plaintiff to sell the business).

We have already affirmed the implicit findings by the jury and the trial court that any misrepresentations by Mr. Gray were not so substantial as to defeat the purpose of the contract for purposes of Mr. Stonecipher's rescission claim. The same reasoning and same conclusion apply here. Mr. Stonecipher was capable of performing the terms of the contract, as the business was more profitable than ever and up and running at all times. Further, the jury determined that the misrepresentation as to the items to be transferred in the sale was not so material that Mr. Stonecipher would not have entered the contract at all. Thus, Mr. Gray's failure to deliver items contemplated to be transferred was not "of such importance that the contract would not have been made without it."

III.

Mr. Gray appeals the sufficiency of the evidence supporting the amount of the setoff as determined by the jury. He asserts that the damages were not ascertainable based on the evidence presented. We review the award of damages by the jury under Rule 13(d) as stated above and find that there is no material evidence to support the verdict.

In a fraudulent misrepresentation case, the appropriate measure of damages is the benefit of the bargain rule. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 233 (Tenn. Ct. App. 1976). This means the plaintiff is entitled to the difference between the actual value of the property received and the value of the property had the representations been true.[5] *Id.* The plaintiff has the burden of proving the damages sustained. *United Brake Sys., Inc. v. American Envtl. Protection, Inc.*, 963 S.W.2d 749, 760 (Tenn. Ct. App. 1997). While damages do not have to be proved exactly, they must be proved with a reasonable degree of certainty to allow the trier of fact to make a fair assessment without speculation. *Pinson & Assoc. Ins. Agency, Inc. v. Kreal*, 800 S.W.2d 486, 488 (Tenn. Ct. App. 1990).

---

[5]Because the "misrepresentation" here was a failure to transfer all the items covered by the contract, this measure of damages is appropriate.

-10-

The evidence showed that disputed accounts receivable totaled $18,000-22,000. Other relevant testimony related to items removed from the premises after Mr. Stonecipher inspected it but prior to his taking over and prior to the execution of the contract. For example, there was testimony that 15-20 cars were moved off of the property after negotiations but prior to Mr. Stonecipher taking over. There was also testimony that Mr. Stonecipher did not receive a pick-up truck valued at $4,000-$5,000 and two generators valued at $400-$500 each, all represented to be included in the sale.

The jury, taking all things into consideration, found that $178,000 was an appropriate value for all of the items proved to have been taken from the premises or money collected that was contemplated to be included in the contract. The testimony only proved approximately $30,000 worth of items intended to be included, but not actually received in the sale. We believe the evidence preponderates against a finding that the 15-20 other cars, including scrap cars, and the miscellaneous parts and equipment were worth the remaining $150,000. There is simply no evidence about the value of the scrap cars or other items removed from the premises.[6] The amount of damages, or set-off determined by the jury cannot be sustained.

Therefore, the amount of set-off is vacated and remanded for further proof on the amount of damages incurred as a result of the misrepresentations or of the failure to transfer items included in the sale.

IV.

On the issue of attorney's fees, Mr. Gray argues that the court erred in not awarding attorney's fees according to a provision in the note. The trial court reasoned:

> The court is going to conclude that because of the damages the jury has found, the actual amount owed by Mr. Stonecipher to Mrs. Gray and the estate was not at the due date capable of calculation and was in effect an unliquidated amount; that this litigation was necessary; and that each party should be responsible for their own respective attorney's fees without any recovery by one against the other.

---

[6] We believe that the jury may have engaged in speculation based on inadmissible testimony to reach this figure. During the trial, Mr. Stonecipher was asked to confirm that he had offered to keep the business if the sale price was reduced, and he did. He stated he had been willing to keep the business if the price were lowered by $200,000. After objection, the jury was told to disregard the information concerning the amount, but not the fact there were discussions aimed at resolving the situation, because it related to settlement negotiations and was inadmissible. Based on the evidence presented, it appears that the jury may have easily determined that the accounts receivable totaling $22,000 were not to go to Mr. Stonecipher because they were collected, in part, before the contract was signed, and subtracted this amount from the amount of contract price reduction he stated he would have been willing to accept, arriving at $178,000.

We agree. While the note did provide for attorney's fees in the event of default and the need to proceed with collection actions against Mr. Stonecipher, the jury determined that Mr. Stonecipher properly brought this action and reduced the final balloon payment, the only payment due, accordingly. Mr. Stonecipher brought an action that disputed the amount left due under the note and, in fact, asked for rescission of the entire contract. The jury verdict in his favor supports the conclusion that the note was disputed and not, therefore, in default. Therefore, the clause providing for attorney's fees was not triggered for the purposes of collection of the note in the event of default.

For these reasons, the court was correct in ordering each party to bear his own attorney's fees, and that order is affirmed.

## V.

Lastly, Mr. Gray asserts that the court erred in assessing court costs one-third to Mr. Stonecipher and two-thirds to Mr. Gray because the rescission claim was dismissed. Tenn. R. Civ. P. 54.04 grants trial courts wide discretion in awarding costs. *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998). The rule provides in pertinent part:

> Costs included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs, but costs against the state, its officers, or its agencies shall be imposed only to the extent permitted by law.

Tenn. R. Civ. P. 54.04.

We review the court's ruling on an abuse of discretion standard. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative. Costs of litigation may be split between the litigants as the court deems equitable. *Sanders*, 989 S.W.2d at 345. "Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm." *Id*.

The trial court's apportionment of costs was a reasonable exercise of its discretion. The jury found in favor of Mr. Stonecipher on the issue of fraud and reduced his obligation on the note. The court then determined that rescission was not appropriate, that the note was valid, and ordered payment in accordance with the set-off. Therefore, in essence, both parties prevailed on some claims. The assessment of costs is affirmed.

## VI.

For the reasons stated herein, the judgment of the trial court is affirmed with respect to the denial of rescission in this case and the award of a set-off to the note accompanying the contract of sale. However, we vacate and remand this cause for a hearing on the damages sustained as a result of the misrepresentations, and, therefore, the amount of set-off. The trial court's award of fees and costs is also affirmed. The costs of this appeal are taxed equally between the parties.

_____
PATRICIA J. COTTRELL, JUDGE