IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 12, 2001 Session

VERNA JORDAN v. RONNIE H. JORDAN, ET AL.

Appeal from the Chancery Court for Rhea County
No. 9337      Jeffrey F. Stewart, Chancellor

FILED FEBRUARY 4, 2002

No. E2001-00005-COA-R3-CV

This dispute involves a claimed oral trust regarding a portion of a 5.42 acre parcel of property ("Property"). Verna Jordan ("Plaintiff"), filed a Complaint against her son and daughter-in-law, Ronnie H. Jordan and Nancy Jordan ("Defendants"), claiming Defendants held a portion of the Property in trust for her benefit. Plaintiff alleged Defendants failed to give her a deed for a portion of the Property when Defendants, as trustees, should have conveyed the parcel under the terms of the oral trust. The Trial Court held an oral trust existed and ordered Defendants to give Plaintiff a deed for her portion of the Property. Defendants appeal. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Gary N. Fritts, Dayton, Tennessee, for the Appellants, Ronnie H. Jordan and Nancy Jordan.

David R. Swafford, Pikeville, Tennessee, for the Appellee, Verna Jordan.

OPINION

## Background

     This appeal concerns a parcel of property consisting of 5.42 acres located in Rhea County ("Property"). In 1986, Hester Burkhalter, Plaintiff's daughter and Ronnie H. Jordan's sister, and Hester's husband, Arthur Burkhalter, purchased the Property. The record shows the Burkhalters paid approximately $9,000 for the Property over a period of six years. A short time thereafter, Hester Burkhalter, who was then a resident of North Carolina, allowed Defendants to place a mobile home on the southeastern portion ("back portion") of the Property. Hester testified she initially allowed Defendants to live on her Property rent-free with the understanding that Defendants would pay her for the back portion. The Burkhalters planned eventually to live on the Property when they retired. Defendants made improvements to the Property, including adding a water well and a gravel driveway.

     The Burkhalters changed their plans to live on the Property, and Hester sold the unoccupied half of the Property, the northwestern portion ("front portion"), to Plaintiff. Sometime prior to 1993, Plaintiff paid Hester $4,500 for the front portion of the Property. Hester testified she calculated Plaintiff's purchase price by dividing her purchase price in half. Hester, however, did not provide a deed to Plaintiff for the front portion of the Property. Hester then decided to sell the entire 5.42 acres of the Property. Hester testified she and Plaintiff agreed that, if the Burkhalters were able to sell the Property to a third party, Hester would return Plaintiff's purchase price of $4,500.

     The Burkhalters' plans to sell the Property changed as well, and Hester apparently decided to return to her previous plan to sell Defendants the back portion of the Property. In her Complaint, Plaintiff alleged that, due to credit problems, Defendants were not able to pay Hester for the back portion of the Property. Plaintiff and Hester testified they and Ronnie Jordan entered into an agreement whereby Hester agreed to give Ronnie Jordan a deed for the entire 5.42 acres of Property so Defendants could use the Property as collateral for a loan. Defendants planned to use the loan proceeds of approximately $24,000 to pay Hester for the land and pay a number of their debts.[1] A purchase price of $5,000 was agreed upon between the Burkhalters and Defendants. At trial, Defendants testified the purchase price was intended to cover the entire 5.42 acres of the Property. Hester and Plaintiff dispute this and testified Defendants purchased only the back portion of the Property. The record on appeal shows that, when Defendants obtained their loan, the Property, as a whole, appraised for $17,500. The Burkhalters gave a warranty deed ("Warranty Deed") to Defendants in 1993 for the entire parcel of Property.

     Ronnie Jordan testified it was only after the Burkhalters gave Defendants the Warranty Deed that Hester Burkhalter informed him that Plaintiff previously purchased the front portion of the Property. One of Ronnie Jordan's brothers, however, testified that, when Defendants obtained the Warranty Deed in 1993, both Defendants stated they planned to deed the front portion of the Property to Plaintiff as soon as their loan was paid. Another one of Ronnie Jordan's brothers testified that both Defendants made these statements to him. Both of these brothers lived with

---

[1] For simplicity's sake, we use round numbers in this opinion as much as possible.

Defendants when Defendants obtained the Warranty Deed in 1993. Moreover, these two brothers testified Ronnie Jordan showed them where he believed the property division line would be located between Defendants' and Plaintiff's respective portions of the Property. On the other hand, a third brother testified in accordance with Defendants' version of the facts. This brother, however, testified he was living out of state in 1993 and, at the time of trial, had not lived in Tennessee for a number of years.

Plaintiff moved from North Carolina in 1994, and placed a mobile home on the front portion of the Property. She has resided there since then. Defendants contend it was only after Plaintiff moved onto the front portion that Plaintiff ever discussed obtaining a deed from Defendants. The record, however, shows Defendants have never attempted to use the front portion of the Property.

Defendants' financial difficulties apparently continued, and they filed bankruptcy sometime after receiving the Warranty Deed. Defendants were discharged from bankruptcy in November 1999.

Plaintiff filed her Complaint in March 2000, alleging Defendants held the front portion of the Property in trust for her benefit. Plaintiff alleged she requested Defendants execute a deed for the front portion of the Property, but Defendants refused. Plaintiff alleged Defendants committed fraud.

Defendants filed an Answer in which they averred they owned the entire parcel of Property. Defendants also raised several affirmative defenses including statute of frauds, adverse possession, statute of limitations, accord and satisfaction, estoppel, laches, payment and waiver. Defendants admitted they allowed Plaintiff to place a mobile home on the front portion of the Property but only did so "out of the goodness of their hearts."

The Trial Court held a trial in October 2000. The trial transcript shows the Trial Court noted that only one member of parties' family, one of Ronnie Jordan's brothers, testified on behalf of Defendants. The Trial Court further noted that this witness had not spent much time in Tennessee so as to be able to witness the occurrence of pertinent facts. Moreover, the Trial Court stated as follows:

> A great number of witnesses have testified affirmatively about the transaction here today, and that's what I know about the transaction
> . . . .
>
> And I think that the testimony that I have heard has been clear, cogent and convincing under the circumstances, that there was a transaction in this case where [Plaintiff] paid her daughter, Hester Burkhalter, for one-half of the property referred to as the front half
> . . . and was to receive a deed.

-3-

At the time then that [Defendants] agreed to pay for the back half . . . paid $5000 – they were unable to borrow that money on just their half of the property; and so a trust was created, a trust of oral nature for the benefit of [Plaintiff]. . . .

Now, the timing of when a deed should be made and when the trust should terminate I think has been established; and the termination of that is when the property was taken out of bankruptcy or when it was redeemed out of bankruptcy. . . .

Thereafter, the Trial Court entered an Interlocutory Order holding that the Warranty Deed given to Defendants by Hester Burkhalter was subject to an oral trust for the benefit of Plaintiff. The Trial Court further held that the trust required Defendants to convey the front portion of the Property to Plaintiff when Defendants' indebtedness on the Property was cleared. Since there was no remaining lien on the Property, the Trial Court ordered Defendants to convey the front portion of the Property to Plaintiff in fee simple.[2] The Trial Court further ordered that a survey be completed so that the division line could be established. The Trial Court later entered its Final Decree holding that the parties had agreed upon a division line separating the parties' respective 2.71 acres. The Final Decree incorporated the survey of the Property.

Defendants appeal. We affirm.

## Discussion

Defendants raise the following issues on appeal: 1) whether the Trial Court erred in finding the existence of an oral trust; 2) whether the Trial Court erred in not applying the defense of Statute of Frauds, found at Tenn. Code Ann. § 29-2-101, to defeat the oral trust; 3) whether the Trial Court erred in failing to find Plaintiff's Complaint barred by the statute of limitations; 4) whether Plaintiff waived her right as beneficiary of the oral trust when she agreed with Hester Burkhalter that the Burkhalters could sell the entire 5.42 acres of the Property to a third party and reimburse Plaintiff's purchase price of $4,500; 5) whether the Trial Court had jurisdiction to find the existence of the oral trust because the Burkhalters, who were parties to the oral trust, were not parties to the lawsuit; and 6) whether the Trial Court erred in allowing Hester Burkhalter to testify about the completeness of the Warranty Deed because Hester was only one of the grantors and the other grantor, Arthur Burkhalter, did not testify at all.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's

---

[2] The Trial Court also held, in the Interlocutory Order, that the front portion of the Property included an easement for the benefit of Defendants which was a roadway.

conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

While Defendants raise several issues on appeal, the pivotal issue is whether the Trial Court erred in finding that an oral trust existed for which Plaintiff was the beneficiary. Proof of an oral trust and its terms is typically established through parole evidence. *Saddler v. Saddler*, 59 S.W.3d 96, 99 (Tenn. Ct. App. 2000); *Sanderson v. Milligan*, 585 S.W.2d 573, 574 (Tenn. 1979). To prevent fraud, that proof must be established by clear, cogent, and convincing evidence. *Id.* The operative verbal statement, to create an oral trust, must have been made prior to or contemporaneous with the transaction involving the written instrument. *In re Estate of Roark,* 829 S.W.2d 688, 692 (Tenn. Ct. App. 1991). Moreover, the written instrument is afforded a favorable presumption. *Id.* at 693; *In re Hodges*, No. W2000-01424-COA-R3-CV, 2001 Tenn. App. LEXIS 419, at * 5 (Tenn. Ct. App. June 1, 2001), *no appl. for perm. app. filed*.

This Court discussed the "clear and convincing evidence" standard in *O'Daniel v. Messier,* 905 S.W.2d 182 (Tenn. Ct. App. 1995), as follows:

> The "clear and convincing evidence" standard defies precise definition. *Majors v. Smith,* 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). While it is more exacting than the preponderance of the evidence standard, *Santosky v. Kramer,* 455 U.S. at 766, 102 S. Ct. at 1401; *Rentenbach Eng'g Co. v. General Realty Ltd.,* 707 S.W.2d 524, 527 (Tenn. Ct. App. 1985), it does not require such certainty as the beyond a reasonable doubt standard. *Brandon v. Wright,* 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992); *State v. Groves,* 735 S.W.2d 843, 846 (Tenn. Crim. App. 1987).
>
> Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *See Hodges v. S. C. Toof & Co.,* 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established. *In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993); *Brandon v. Wright,* 838 S.W.2d at 536; *Wiltcher v. Bradley,* 708 S.W.2d 407, 411 (Tenn. Ct. App. 1985).

*O'Daniel v. Messier,* 905 S.W.2d at 188.

Our first task is to determine what type of trust, if any, was created. The record shows the Trial Court held only that an oral trust was created and did not specify what type of oral trust was established. Tennessee law recognizes three types of trusts: 1) express; 2) resulting; and 3) constructive. *See generally* Gibson's Suits in Chancery § 378, *et seq.,* (1978). Due to the facts and circumstances presented by the record on appeal, we find that the trust at issue is not an express trust but is, instead, either a resulting trust or a constructive trust.

This Court has held that constructive trusts are found in four types of cases which are outlined as follows:

> (1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; (2) where the title to property is obtained by fraud, duress or other inequitable means; (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits.

*Myers v. Myers,* 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994).

The law of resulting trusts in Tennessee has been summarized by this Court as follows:

> "[A resulting trust] is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.
>
> While resulting trusts generally arise (1) on a failure of an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another – sometimes referred to as a 'purchase-money resulting trust' – they may also be imposed in other circumstances, such that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust . . . in order to prevent a failure of justice."

*Saddler v. Saddler*, 59 S.W.3d at 98 (quoting *In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993)). In addition, to establish a resulting trust, "it must be shown that the beneficiary actually made payment, or incurred an absolute obligation to pay, as part of the original transaction of purchase." *Rowlett v. Guthrie*, 867 S.W.2d 732, 735 (Tenn. Ct. App. 1993). Courts find the existence of a resulting trust as an equitable remedy and use the doctrine to prevent unjust enrichment. *Saddler v. Saddler*, 59 S.W.3d at 98.

It is a close question whether this matter involves a resulting or constructive trust. We hold, however, that the facts and circumstances presented by the record are a better fit in the resulting trust category. *See Browder v. Hite*, 602 S.W.2d 489, 493-94 (Tenn. Ct. App. 1980) (finding a resulting trust where plaintiffs and defendants agreed that defendants would purchase real property using plaintiffs' money so that plaintiffs' loan application for another pending real estate conveyance would not be disrupted and that once plaintiffs' loan application was approved, the real property would be conveyed to plaintiffs); *see also Thatcher ex rel. Story v. Wyatt*, No. 02A01-9605-CH-00114, 1997 Tenn. App. LEXIS 332, at * 11 (Tenn. Ct. App. May 15, 1997) (quoting *Estate of Wardell ex rel. Wardell v. Dailey*, 674 S.W.2d 293, 295 (Tenn. Ct. App. 1983) (holding that a resulting trust is created "'when property is conveyed or given by one person to another, to hold for the use of a third person . . .'"); *no appl. for perm. app. filed*.

We now must determine whether the proof contained in the record on appeal shows Plaintiff met her heightened burden of proof of establishing the existence of the oral resulting trust by clear, cogent, and convincing evidence. In support of their argument on appeal that the Trial Court erred in finding the existence of an oral trust, Defendants point to various witness' testimony and contend the proof shows that Ronnie Jordan never agreed to the oral trust and that Nancy Jordan was not told about the oral trust until after Defendants obtained the Warranty Deed in 1993. Defendants, in short, denied the existence of the trust. Plaintiff and her witnesses testified the trust was in existence when Defendants paid Hester Burkhalter $5,000 for the land in 1993. In addition, Plaintiff's witnesses testified Defendants stated they planned to give Plaintiff a deed once their loan was paid and that Ronnie Jordan pointed out the boundary line between Defendants' and Plaintiff's respective portions of the Property to two of his brothers who were trial witnesses.

In making its finding that an oral trust was in place when Defendants obtained the Warranty Deed, the Trial Court assessed the credibility and demeanor of the witnesses. Here, the Trial Court found Plaintiff and her witnesses to be the more credible witnesses. Moreover, the trial transcript shows the Trial Court remarked upon the number of witnesses who testified affirmatively about the existence of the oral trust. "Unlike this Court, the [T]rial [C]ourt observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The Trial Court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

In addition, the proof contained in the record on appeal shows that Hester Burkhalter received $4,500 from Plaintiff and $5,000 from Defendants. The Burkhalters paid a total of $9,000 for the Property in the 1980's. When Defendants obtained their loan in 1993, the Property, with the improvements, appraised for $17,500. The proof also establishes that Defendants never tried to use the front portion of the Property. *See Troy v. Troy*, No. M1998-00989-COA-R3-CV, 2002 Tenn. App. LEXIS 8, at * 22-23 (Tenn. Ct. App. Jan. 4, 2002) (finding that the petitioner failed to prove

the existence of an oral trust regarding real property where the alleged grantors' conduct was consistent with their fee simple ownership of the property).[3]

We find no error with the Trial Court's decision that Plaintiff carried her burden of establishing the existence of the trust by clear, cogent, and convincing evidence. The record as a whole shows the Trial Court correctly found the existence of the oral trust as the proof "produce[s] in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." *O'Daniel v. Messier,* 905 S.W.2d at 188. Accordingly, in light of the proof contained in the record on appeal and the deference which we afford the Trial Court's findings regarding witness credibility, we hold the Trial Court did not err in finding the existence of an oral trust.

We next consider Defendants' issue regarding their Statute of Frauds defense. Defendants argue the Trial Court erred in failing to find that the oral trust was unenforceable due to the Statute of Frauds. In support of their argument, Defendants cite Tenn. Code Ann. § 29-2-101(a)(4), which provides as follows:

> (a) No action shall be brought:
> (4) Upon any contract for the sale of lands, tenements or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . .
> unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

In responding to a similar argument, our Supreme Court held that the Statute of Frauds does not affect a trust for real property since Tennessee has not adopted the portion of the English Statute of Frauds which requires trusts affecting property to be in writing. *Sanderson v. Milligan*, 585 S.W.2d 573, 574 (Tenn. 1979); *Troy v. Troy*, Tenn. App. Lexis 8, at * 16. Our Supreme Court further held as follows:

> Absent this statutory prohibition, this court has consistently recognized that a trust may rest upon a parol agreement where the declaration of trust was made prior to or contemporaneous with a transfer, either by deed or by will, of an interest in realty.

*Sanderson v. Milligan,* 585 S.W.2d at 574. Accordingly, we hold the Trial Court correctly found Defendants' Statute of Frauds defense has no merit as the Statute, under current Tennessee law, does not affect the oral trust.

---

[3] While the 60 days to file a Tenn. R. App. 11 application for permission to appeal to our Supreme Court has not yet expired in *Troy v. Troy*, no Rule 11application had been filed as of the date of filing of this opinion.

Next, we review Defendants' statute of limitations defense. The parties agree on which statute of limitations applies but disagree *when* Plaintiff's cause of action accrued. Defendants contend the limitations period for Plaintiff's claim began running in November 1993, the date Defendants obtained the Warranty Deed from the Burkhalters. Defendants argue that, because Plaintiff's Complaint was not filed until March 2000, the statute of limitations had expired, and Plaintiffs' claim was barred. Plaintiffs contend, however, and the Trial Court apparently agreed, that her Complaint was timely filed because her cause of action did not accrue until the lien on the Property was lifted after Defendants were discharged from bankruptcy in November 1999.

In the case of a resulting trust, the statute of limitations does not begin running "until the trustee does some act hostile to the *cestui*." *Vick v. Vick*, 449 S.W.2d 717, 721 (Tenn. Ct. App. 1968) (emphasis added). As discussed, the Trial Court correctly held that the terms of the oral trust in this case required that, once Defendants' 1993 loan was paid in full, Defendants give Plaintiff a deed for the front portion of the Property. Accordingly, the time for Defendants to perform their duty, as trustees, to give a deed to Plaintiff did not arise until the lien on the Property was lifted. The record shows Defendants were discharged from bankruptcy in November 1999. Therefore, Plaintiff's claim against Defendants did not accrue and the statute of limitations did not begin running until Defendants were discharged from bankruptcy and refused to give Plaintiff a deed for the front portion of the Property. *See id.* As a result, we hold the Trial Court correctly found Defendants' statute of limitations defense to be without merit.

We next review Defendants' argument on appeal that Plaintiff waived her right to the front portion of the Property when she agreed with Hester Burkhalter that if Hester sold the entire 5.42 acres to a third party, Hester could refund Plaintiff's $4,500 purchase price. This Court has held:

> [I]n order to constitute an abandonment or waiver of a legal right, "there must be a clear, unequivocal, and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part. . . . To constitute such a waiver of benefit there must be clear, unequivocal, and decisive acts of the party, an act which shows a determination not to have the benefit intended. . . ."
>
> Waiver may be proved by "express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct; or by so neglecting and failing to act, as to induce a belief that it was [the party's] intention and purpose to waive."

*Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998) (citations omitted) (alterations in original). The party who asserts the defense of waiver has the burden of establishing waiver by a preponderance of the evidence. *Id.*

The record shows Plaintiff agreed to accept Hester Burkhalter's reimbursement of her purchase price if Hester sold the entire parcel of Property to a third party. The proof shows this agreement took place *before* the resulting trust was established. The record also shows Hester and Plaintiff later agreed to the terms of the oral trust to accommodate Plaintiff's credit-poor son and his wife. Moreover, Plaintiff's conduct after Defendants obtained the Warranty Deed in 1993 does not show that Plaintiff ever intended to relinquish her right to the front portion. Instead, the proof establishes quite the contrary as Plaintiff moved a mobile home onto the front portion in 1994 and asked Defendants to give her a deed for her part of the Property. In short, the record on appeal shows Defendants did not carry their burden of establishing their defense of waiver. Accordingly, we find no error by the Trial Court in finding that Plaintiff did not waive her rights as beneficiary of the trust.

Defendants' final issues on appeal arise from the fact that the Burkhalters were not parties to the lawsuit and that Arthur Burkhalter did not testify at trial. Defendants first argue the Trial Court did not have jurisdiction to find the existence of the oral trust since one set of the parties to the oral trust, the Burkhalters, were not parties to the lawsuit. The record on appeal, however, shows Defendants never raised this issue at the trial level. It is well-settled that issues not raised at trial may not be raised for the first time on appeal. *Simpson v. Frontier Comty. Credit Union,* 810 S.W.2d 147, 153 (Tenn. 1991); *DHS v. DeFriece,* 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Defendants next contend the Trial Court erred in allowing Hester Burkhalter to testify about the completeness of the Warranty Deed since Hester was only one of the grantors. The record on appeal shows Defendants did not raise this issue at the trial level, and accordingly, Defendants cannot raise this matter for the first time on appeal. *Id.* Accordingly, we hold Defendants' two remaining issues are not properly before this Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellants, Ronnie H. Jordan and Nancy Jordan, and their surety.

_____
D. MICHAEL SWINEY, JUDGE

-10-